IN THE STATE CIRCUIT COURT TWENTY SECOND JUDICIAL CIRCUIT

CITY OF ST. LOUIS, STATE OF MISSOURI

| | | |
|---|---|---|
| IN RE: ESTATE of P.D. & VANDELIA W. JOHNSON | ) | **(JURY TRIAL DEMAND)** |
| JEFFREY L.G. JOHNSON, EXECUTOR | ) | CAUSE NO: 2022CC00594 |
| JOSEPH JOHNSON, [Estate's Legal Proxy] | ) | CIVIL Division 19 |
| Plaintiffs,[1] | ) | 1964 Civil Rights Act |
| v. | ) | 28 U.S.C. S 1983 |
| UNITED STATES, | ) | 1866 Civil Rights Act |
| DONALD J. TRUMP, | ) | FTCA 28 S 2674 |
| President of the United States, | ) | 28 U.S.C. 1981 |
| Barack H. Obama, former President,[4a] | ) | 42 U.S.C. S 405 |
| The White House | ) | RICO 84 Stat. 922-3 |
| 1600 Pennsylvania, Ave., NW | ) | 18 U.S.C. S 912 |
| Washington, DC 20500 | ) | 18 U.S.C. S 1505 |
| U.S. DEPARTMENT of JUSTICE, DOJ,[5] | ) | 18 U.S.C. S 241 S 242 |
| William P. Barr, U.S. Attorney General, | ) | Fourth Amendment |
| Eric H. Holder, Jr., former Attorney General,[4a] | ) | Fifth Amendment |
| Jeffrey B. Jensen, U.S. Attorney | ) | Fourteenth Amendment |
| Nicholas P. Llewellyn, Asst. U.S. Attorney | ) | Mo.Civ. |
| Robert E. Kirschman, Jr., Director | ) | |
| Patricia M. McCarthy, Asst. Director | ) | RSMo, S 516.120(5) |
| Agatha Koprowski, Trial Attorney, | ) | |
| Noel J. Francisco, Solicitor General, | ) | Mo.Crim. |
| Donald B. Verrilli, Jr., former Solicitor General, | ) | |
| Richard G. Callahan, former U.S. Attorney, | ) | RSMo, 562.014 |
| U.S. Dep't of Justice | | |
| 950 Pennsylvania, Ave, NW | ) | RSMo, S 564.016(1) |
| Washington, DC 20530 | ) | |
| | ) | RSMo, S 541.110 |

EXHIBIT A

FEDERAL BUREAU OF INVESTIGATION, FBI      )     Mo.Const.

Christopher A. Wray, Director,      )

James Comey, former FBI Director,      )     Article I, Section 10

Federal Bureau of Investigation, (FBI),      Article I, Section 13

935 Pennsylvania Ave., NW      )

Washington, DC 20535      )

CENTRAL INTELLIGENCE AGENCY, CIA      )

Gina C. Haspel, Director,      )

Central Intelligence Agency, (CIA)      )

George Bush Center, Intelligence,      )

George Washington Parkway      )

Langley, VA 20505      )

NATIONAL SECURITY AGENCY, NSA      )

General Paul M. Nakasone, Director,      )

National Security Agency, (NSA)

9800 Savage Rd. Route 32      )

Baltimore/Washington Parkway      )

Anne Arundel County, Maryland 20775      )

OFFICE DIRECTOR NATIONAL INTELLIGENCE, ODNI      )

Michael Maguire, Director      )

Office of the Director Nat. Intel., ODNI,      )

NW, Washington, DC 20511      )

DEPARTMENT HOMELAND SECURITY, DHS      )

Kevin K. McAleenan, Acting Secretary,      )

Dep't of Homeland Security, DHS      )

Nebraska Ave. Complex, Washington DC 20528      )

UNITED STATES POSTAL SERVICE      )

Megan Brennan, Postmaster General      )

475 L'Enfant Plaza SW      )

Washington, DC 20260      )

UNITED STATES SUPREME COURT                                    )

John G. Robert, Jr. Chief Justice,[4a]                         )
Elena Kagan, Associate Justice,                                )
Neil M. Gorsuch, Associate Justice,                            )
Clarence Thomas, Associate Justice,                            )
Scott Harris, Clerk,                                           )
U.S. Supreme Court Bldg.                                       )
1 First Street NE, Washington, DC 20543                        )

HOUSE OF REPRESENTATIVES                                       )

Nancy Pelosi, Speaker,[4a]                                     )
William L. Clay Jr., Representative,[4a]                        )
U.S. House of Representative                                    )
1236 Longworth H.O.B.                                           )
Washington, DC 20515                                           )

UNITED STATES SENATE                                           )

Addison M. McConnell Jr., Majority Leader,                     )
Harry Reid, former Majority Leader, [4a]
317 Russel Senate Office Bldg.                                 )
Washington, DC 20510                                           )

UNITED STATES DISTRICT COURT, EASTERN DIVISION                 )

Rodney W. Sippel, Chief Judge,                                 )
Catherine D. Perry, Senior Judge,                              )
Charles A. Shaw, Dist. Judge,
Non-Defendant Individual-4, Dist. Judge                        )
Edward L. Filippine, Senior Judge                              )
John A. Ross, Dist. Judge                                      )
Stephen N. Limbaugh, Jr., Dist. Judge
Henry E. Autrey, Dist. Judge                                   )
Audrey G. Fleissig, Dist. Judge
E. Richard Webber, Dist. Judge                                 )
Ronnie L. White, Dist. Judge
Stephen R. Clark, Dist. Judge                                  )

Frederick R. Buckles, former Magistrate Judge )
Gregory J. Linhares, Clerk of Court )
James G. Woodward, former Clerk of Court )
Thomas F. Eagleton Federal Courthouse
111 S. 10th St. )
St. Louis, MO 63102 )

UNITED STATES COURT OF APPEAL EIGHTH CIRCUIT )

Lavenski R. Smith, Chief Judge,[2] )
William J. Riley, former Chief Judge
Thomas F. Eagleton Federal Courthouse
111 S. 10th St. )
St. Louis, MO 63102 )

UNITED STATES DISTRICT COURT, DIST. of COLUMBIA, )

Beryl A. Howell, Chief Judge,[2] )

UNITED STATES COURT OF APPEAL, DC CIRCUIT, )

[**DROPPED PARTIES,** Non-Defendants]

FOREIGN INTEL. SURVEILLANCE COURT, FISC )

Rosemary M. Collyer, Presiding Judge,[3] )
E Barrett Prettyman Fed. Courthouse
333 Constitution Ave., NW )
Washington, DC 20001 )

UNITED STATES COURT OF FEDERAL CLAIMS )
Susan G. Braden, former Chief Judge,
Bohdan A. Futey, Senior Judge, )
717 Madison Pl., NW Washington, DC 20439

UNITED STATES COURT OF APPEALS FEDERAL CIRCUIT )

[**DROPPED PARTIES,** NON-DEFENDANTS )

SOCIAL SECURITY ADMINISTRATION, SSA )

Nancy A. Berryhill, Acting Commissioner, )
Mike Kramer, Reg. Commissioner, Region VII
Julia D. Gibbs, Appeals Council Judge, )
Gabriel E. Depass, Appeals Council Judge, )
J Pappenfus, Administrative Law Judge,
James E. Seiler, Administrative Law Judge, )
Kristi A. Schmidt, Chief General Counsel, )
Sean N. Stewart, Asst. Reg. Counsel, )
1500 Woodlawn Dr., Baltimore, Maryland 212411

DEP'T OF HEALTH and HUMAN SERVICES, DSS )

Alex M. Azar, Secretary )
200 Independence Ave., S.W
Washington, DC 20201

STATE OF MISSOURI,[5] )

Michael L. Parson, Governor,[2] )
Eric Greitens, former Governor,.
Jeremiah W. Nixon, former Governor,[4a] )
P.O. Box 720
Jefferson City, MO 65102 )

OFFICE OF THE STATE ATTORNEY GENERAL )

Eric Schmitt, Attorney General of Missouri,[2] )
Josh Hawley, former State Attorney General
Chris Koster, former State Attorney General,[4a] )
Unknown DOE, Asst. State Attorney General, )
Missouri Supreme Court Bldg., )
207 W. High Street, P.O. Box 899 )
Jefferson City, MO 65102

MISSOURI STATE TREASURER )

Scott Fitzpatrick, Treasurer, )
P.O. Box 210, Jefferson City, MO 65102 )

MISSOURI SUPREME COURT                                    )

Zel M. Fisher, Chief Justice,[2],                        )
Mary R. Russell, Former Chief Justice,
Colleen Dolan, Circuit Judge,                            )
James A. Pudlowki, Deceased,                             )
Former Chief Judge, Ct. App., ED                         )
Missouri Supreme Court Building                           )
207 W. High St., Jefferson, City, MO 65101

MISSOURI GENERAL ASSEMBLY                                 )

Elijah Haahr, House Speaker,[2]                           )
Dave Schatz, Senate President pro tempore,[2]            )
201 West Capitol Ave., Jefferson City, MO 65101

MISSOURI DEP'T SOCIAL SERVICES                            )

Steve Corsi, Director,[2]
D.B. Kammerer, Attorney                                   )
Michael S. Kisling, Attorney
P.O. Box 2320, Jefferson City, MO 65102                   )

ST. LOUIS COUNTY,[5]                                      )

Sam Page, County Executive,[2]                            )
Steve Stenger, former County Executive,[4]               )
Charlie Dooley, former County Executive,[4a]
100 South Central Ave., 2nd Floor                   )

Wesley Bell, County Prosecutor,
Robert McCulloch, former County Prosecuting Attorney[4a]   )
100 S. Central  Ave., 2nd Floor, Clayton, MO 63105   )

Beth Orwick, County Counselor
41 S. Central Ave, Clayton, MO 63105                      )

CIRCUIT COURT St. Louis County
Maura B. McShane, Former Presiding Judge                  )
Collen Dolan, Circuit Judge

Dennis N. Smith, Circuit Judge                                    )
105 S. Central Ave., Clayton, Mo 63105

CITY of ST. LOUIS, MISSOURI,                                      )
Lyda Krewson, Mayor
Michael Graham, Chief Medical Examiner                            )

Julian Bond, City Counselor                                       )
City Hall, 1200 Market St., St. Louis, MO 63103                   )

CIRCUIT ATTORNEY'S OFFICE                                         )

Kimberly M. Gardner, Circuit Attorney
Jennifer Joyce, former Circuit Attorney,                          )
1114 Market St. # 401, St. Louis, MO 63101                        )

PUBLIC DEFENDER'S OFFICE

Mary Fox, District Public Defender,                               )
Frank Fabbri, III, former Public Defender
1114 Market St. # 602. St. Louis, MO 63101                        )

CIRCUIT COURT City of St. Louis/ PROBATE DIVISION                 )

Brendan R. Ryan, former Circuit Judge                             )
Mary K. Hoff, Circuit Judge                                       )
Mark Ostenfeld, Public Administrator                              )
Christopher McGraugh, Circuit Judge
Charles D. Kitchin, former Circuit Judge
Thomas Kloeppinger, Circuit Clerk                                 )
10 N. Tucker Blvd., St. Louis, MO 63101

FOREIGN CITY, STATE [THE VATICAN],                                )

Robert J. Carlson, Bishop,[2]
20 Archbishop May Dr., St. Louis, MO 63119                        )
Subsidiary /Business / Employee
Steven Scott, President,[5]                                       )
Dr. Robert M. Donati, Deceased,                                   )
Unknown John or Doe, Hospital Pathologist,                        )

SSM Health St. Louis University Hospital                    )
3635 Vista Ave at Grand, St. Louis, MO 63131

Raj Subramaniam, President, CEO,                          )
FedEx Corporation                                        )
Unknown Doe [employee]
942 South Shady Grove Rd., Memphis, TN 38120             )

Randall L. Stephenson, Chairman,[5]
AT&T Communications                                      )
175 E. Houston, San Antonio, TX 78205

Hans Vestbery, CEO,[5]                                   )
Verizon Communications Inc.
140 W St., Civ. Center                                   )
Tribeca, New York, New York 10007

Thomas Rutledge, CEO,[5]                                 )
Charter Communications Co.
12405 Powercourt Dr., St. Louis, MO 63131

Jamie Shaddix, Interim CEO,[5]                           )
Angelica Corporation
1105 Lakewood Parkway, Ste. 210                          )
Alpharetta, GA 30009

Julius H. Berg & Assoc. or Andrew S. Berg,[5], c/o       )
Berg, Borgmann, Wilson, Wolk, Reynolds, LLC,
Dennis A. Buchheit, Attorney
12813 Flushing Meadows Dr., St. 150                      )
St. Louis, MO 63131

Brinker & Doyen, L.L.P.
34 N. Meramec, 5th Floor                                 )
Clayton, MO 63105

Sam C. Bertolet, Attorney                                )
7625 Wydown Blvd, Apt. 1n                                )
Clayton, MO 63105                                        )

John Doe or Unknown Doe,                            )

In their individual, official or business capacity   )

Defendants,

---

1

Title III spying and civil rights claim in re Estate No. 3-87-0974-P-D & 3-93-1257-PD plaintiffs P.D. Johnson, Vandelia W. Johnson, John H. Johnson, Lona J. Moore aka Lone J. Johnson, Clyde J. Johnson, Rita J. Johnson, David J. Johnson, Jerry A. Johnson, Jeffrey L.G. Johnson, and Joseph Johnson.

2

Resignation, termination, conviction, or death; see, e.g. Substitution of Parties Mo. R. Civ. Proc. 52.13(d) "…successor is automatically substituted as a party…"

3

Retained in the event the Secret Court, FISC, granted and continued the reauthorization of a 215 FISA Title III surveillance warrant; or Federal district court granted a Fourth Amendment warrant FISC Chief Judge "dropped party."

4

Person not liable as defendant for statutory "fiduciary duty" requirement RSMo during State circuit court proceeding. 4(a) Office holder at time of Title III felony admission in 2009 – 2010.

5

Enterprise deemed "persons" [government entity, businesses, corporations persons] "failure to plead or otherwise defend" voluntary default, or filed "time barred" motions in Federal district court. Consciousness of guilt a type of circumstantial evidence of inculpatory guilt, or intent not to provide "impeachable evidence," when willfully foregoing the right to speak rule 12. Silence is an action or statement that a person accused of a crime makes that an innocent person would not make, or would not defend against allegation that are not true defaulting rule 55, without providing exculpatory Brady evidence defense response. Enterprise's silence not based upon the Fifth Amendment right protection relevant to actual judicial proceeding, but during trial proceeding, or Miranda warning protection post arrest right.

## CIVIL ACTION: **PETITION**

Section 1983 Civil Rights Act of 1871 ch. 22 17 Stat. 13 (1871 (codified as amended at 42 U.S.C. S 1983 (1982), 1964 Civil Rights Act Pub. L. 88-352, 78 Stat. 241. State circuit court has concurrent jurisdiction allows suit in law and equity against any person, including federal, state and local government officials. Who violate federally guaranteed rights under color of federal and state law," "same fact situation" as in Federal district court proceedings S 1983 diversity jurisdiction. Supremacy clause compels state courts to protect the rights granted by the Constitution and laws of the United States. See, e.g. Missouri Constitution, Bill of Rights, Article I, Section 2 in pertinent part: "...that all persons have a natural right to liberty...that all persons are created equal and are entitled to equal rights...under the law." Plaintiffs' S 1983 claim Fourth Amendment, Racketeer Influenced and Corrupt Organization, RICO ACT 18 U.S.C. S 1961-1968 joining state law Missouri fraud statute RSMo, S 516.120(5) and Conspiracy Statute RSMo, S 564.016.6(1).

Plaintiffs, Joseph Johnson, Jeffrey L.G. Johnson, Jerry A. Johnson and estate members [familial[1] are entitled to relief, U.S. citizen currently residing in the City St. Louis, State of Missouri or at time of death in re estate No. 3-87-0974-P-D,[n.**1**], petition joinder of claims and remedy; those similar circumstanced civil rights deprivation and subjected to Title III program by defendants. Plaintiffs seek relief inter alia First, Fourth, Fifth and Fourteenth Amendments due process deprivation, liberty privacy deprivation, property unconstitutional taking by United States, and State of Missouri, and foreign City State licensed to conduct business within the jurisdiction of the State of Missouri.

## JURISDICTION AND VENUE

This Court has jurisdiction Article V, sec. I, and venue is proper Art. V, sec. 14(a), and Missouri Long-Arm Statute RSMo 506.500.1(1-3) commission of "tortious act," within the state. diversity jurisdiction of citizens of the state and another state or district Washington, DC, State of Illinois, State of Texas and State of Tennessee, corporation or its employees, its subsidiary, business or citizens of a Foreign City State principal interest licensed to conduct business within the State of Missouri. State circuit court's "pendent jurisdiction" exist when the state and federal claims "derive from a common nucleus of operative fact "and are such

that a plaintiff "would ordinarily be expected to try them all in one judicial proceeding." Osborn v. Bank, 22 U.S. at 725. See also Kokkoden v. Guardian Life Ins. Co., 511 U.S. 375 (1994). Redress violation of federal rights by federal and state officials; Martinez v. California, 44 U.S. 277, 283-85 (1980).

## STATEMENT OF THE CASE

Section 1983 of the Civil Rights Act of 1871, prior, Federal district court proceedings "diversity jurisdiction" state law applied in district where proceeding are held, and federal question "actual case and controversy" civil conspiracy claim S 1983 deprivation under the United States Constitution and federal law "plaintiff could pursue a claim under federal statute in state court." Claflin v. Houseman, 92 U.S. 130 (1876). State courts can have concurrent jurisdiction over federal claims…" Tafflin v. Levitt, 493 U.S. 455 (1990). State courts have concurrent jurisdiction over civil RICO claim. The presumption in favor of such jurisdiction. Page 493 U.S. 456. To the extent that Congress intended RICO to serve a broad remedial purpose, concurrent jurisdiction will advance, rather than jeopardize, federal policies underlying the statute. Pp. 493 U.S. 464-467. Unanimous Supreme Court; and-

(a). Section 1983 "Every person who, under color of any statute…or subject any person, or causes to be subjected, any citizen of the United States…within the jurisdiction thereof to deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity…"

RSMo, S 506.500.1(3) "The commission of a tortious act within the state; and-section 6(3)-"Only cause of action arising from the acts enumerated in this section may be asserted against a defendant in action in which jurisdiction is upon this section."

Post Title III surveillance and interception admission under Freedom of Information Act, FOIA by principal 18 U.S.C. S 2, defendant, United States in 2009 – 2010. Diversity jurisdiction relevant State law in district court Missouri's conspiracy statute RSMo, S 562.014.6(1) each defendant in responsive pleading must "specifically deny" the existence of the Title III program within their respective jurisdictions or plead the Title III program had been "**abandoned**" or the criminal conduct is continuing **admitted** rule 8(c).

Missouri recognizes the right to privacy personal, familial and associational is "fundamental" to ordered liberty; State ex rel. Delmar Gardens North Operating, LLC v. Gaertner, 239 S.S.3d 608, 609-12 (Mo 2007).

Mo.Const., Bill of Rights, Article I, Section 10-"That no person shall be deprived of life, liberty or property without due process of law," Section 15-"That the people shall be secure in their person, papers, home effects and electronic communications and data, from unreasonable searches and seizure...without probable cause supported by written oath or affirmation."

United States Supreme Court held in Medtronic, Inc. v. Lohr, 518 U.S. (1996), "states are independent sovereigns in our federalist system." State of Missouri retained "sovereignty over affairs within its territory"; Pennoyer v. Neff, 95 U.S. 114, 737 (1877). Tortious act committed against the sovereign laws of the State of Missouri can be prosecuted under Missouri Long-Arm Statute RSMo, S 506.500 against the offenders in State circuit court.

## JUDGES & DEFENDANTS' ARGUMENTS and PLAINTIFFS' RESPONSE

District Judge(s) ARGUMENT 1: "plaintiffs fail to state a claim upon which relief can be granted and is legally frivolous 28 U.S.C. S 1915."

RESPONSE: Post Title III admission under FOIA plaintiffs' diversity claim was colorable Section 1983 of the Civil Rights Act of 1871, Bivens' claim "implied cause of action" Fourth Amendment violation by law-enforcement, injunctive and prohibition relief via order 1986 Act 18 U.S.C. S 2521.

Citing Martez Anthony Dickson v. Thomas Kloeppinger, No. 4:17-cv-2448RLW: Decided September 22, 2017 Ronnie L. White, Judge. "To determine whether an action fails to state a claim upon which relief can be granted the court **must** engage in a two-step inquiry. First, the Court must identify the allegations in the complaint that are not entitled to the assumptions of truth." Ashcroft v. Lgbal, 129 S.Ct. 1937, 1950-51 (2009). Second, the Court **must** determine whether the complaint states a plausible claim for relief. Id. At 1950-51."

Defendants' ARGUMENT 2:  "Plaintiff failed to state a claim upon which relief can be granted," or plaintiff fail "to state a claim to relief that is plausible on its face."

RESPONSE:  Defendants' initial **decisions** to join [assist] in implementing the Title III program within their respective jurisdictions "meeting of minds" is basis for relief Section 1983 claim.

City, municipalities, county governments are "persons" within the meaning of Section 1983 when exercising the State's "police powers," and can be held liable for civil rights violations based upon ordinance, policy or **decisions**. State of Missouri not deemed "person" under S 1983 Congress enacting S 5 Fourteenth Amendment abrogated the state's sovereign immunity Eleventh Amendment. State of Missouri's **decision** to assist in implementing the Title III program, also, acting under the State's "police powers". United States deemed "person" under S 1983. Defendant's civil immunity waived conduct attributed to United States Government FTCA defendant's **decision** to authorize and implement the Title III program. Those **decisions** made and executed form the basis of civil liability S 1983. Montell v. Dep't of Social Services of City of N.Y., 436 U.S. 658, 98 S. Ct. (2018). Citing Montell, id, City of St. Louis, St. Louis County and State of Missouri collective **decisions** "affected the plaintiff's civil rights." Id, at 690-91, 98 S. Ct. at 2036.

Defendants' ARGUMENT 3:  "Prior decision(s) dismissing under color of federal law 28 U.S.C. S 1915 are res judicata" final judgment settled.

RESPONSE:   In recent case(s) before District Judge E Richard Webber 4:19-cv-01694ERW. Before District Judge(s) Audrey G. Fleissig, Ronnie L. White, and Stephen R. Clark No. 4:19-cv-02328AGF/RLW/SRC. Clerk of the Court disclosed the Court and "all attorneys, additional recipients, and terminated parties" were communicating ex parte in the use of emails wireless communications in certain instance crossing state line(s), in addition, Clerk of Court via email transferred Document 4 to "all attorneys" in the instant case  wire fraud 18 U.S.C. S 1343,

"Continuing tort violation" or "continuing violation doctrine" "each overt act causing damage within a conspiracy gives rise to a separate claim." Wells v. Rockefeller, 728 F.2d 209, 216 -17 (3rd Cir 1984).

Defendants' ARUGMENT 4:  "Motion(s) to dismiss Plaintiffs' First Amended Complaint "if first complaint does not state a claim...the second duplicate complaint...which relies...on the allegations made in the first complaint...does not state a valid claim either."

RESPONSE: Defendant(s) references in their motions to dismiss "plaintiffs' amended complaint" or "first amended complaint" [DOC 4]. Judge Clark in the order No. 4:19-cv-02328 on the court's own motion construed Document 4 to be a supplemental to the original complaint "legally voiding" defendants' arguments Document 4 sought to amend the original complaint as ground for dismissal.

Defendants' ARGUMENT 5:  The complaint is "fatally flawed in their legal premises and designed to fail."

RESPONSE: **Legal Premises**: Principal, United States under FOIA disclosures acknowledges the Title III electronic and interception program authorized in Washington, DC and facilitated within the jurisdiction(s) of the State of Missouri, City of St. Louis and St. Louis County RICO. Federal question involving the Constitution Fourth Amendment, and federal law National Security Act of 1947 prohibiting the conduct.

Defendant's ARGUMENT 6:  "Plaintiffs' complaint failed to comply with rule 9 who, what, when, why and how."

RESPONSE:  Post Title III admission under FOIA federal discovery rule 26 will determines who, what, when, why and how in the commission of a conspiracy involving concealment and cover-up. In a "meeting of minds conspiracy," it is not required that the parties meet or know the parts played by others, but each subsequent act committed joining additional parties fall within the conspiracy [continuing tort doctrine]. Judicial Departments [federal / state] concealing and cover-up the acts with orders of dismissal 28 S 1915, or orders granting judgment to party under Title III inculpatory guilt admission, or obstructing discovery hindering the prosecution of the party and offenses.

<u>DIVERSITY JURISDICTION LEGAL STANDARD</u>

Defendants' ARGUMENT 7:  "Defendant was not properly served, or the court lack jurisdiction over the party, or want of jurisdiction."

RESPONSE:  Section 1983 and Missouri Crime Victim's Statute Title III deprivation; "federal claim...from the Constitution, federal statute...and non-federal claims arise "from a common nucleus of operative fact "such that a plaintiff "would ordinarily be expected to try them in one judicial proceeding." United Mine Workers of America v. Gibbs, 383 U.S. 715 (1966).

RESPONSE:  RSMo, S 564.016 section 6 -"A person is guilty of conspiracy with another person or persons to commit an offense if, with the purpose of promoting or facilitating its commission he agrees with such other persons that they or one or more of them will engage in conduct which constitutes such offense."  RSMo, S 565.002(3)-"Includes any act or omission section 4 -"A pattern of conduct composed of two or more acts, which may  include communication or by any means, over a period of time, however short, evidencing a continuity of purpose."  RSMo, S 565.001.1.4(2) -"If the offense is committed partly in one county and partly in another, or if the elements of the offense occur in more than one county, then in any counties where any element of the offense occurred."

Aforementioned section 6, section 3, section 4, and section 1.4(2) is evidenced against defendants, United States, State of Missouri, City of St. Louis and St. Louis County "continuity of purpose." In the District of DC "promoting" the offense Title III program and "facilitating its commission" within the jurisdiction of the State of Missouri. The conduct or offense occurring "partly in one county and partly in another" [City of St. Louis and St. Louis County], involving a "pattern of conduct composed of two or more acts" [predicate offenses] occurring "over a period of time," "which may include communications or by any means."

RESPONSE: Title III inculpatory guilt admission under FOIA "substantive evidence is defined as evidence that a reasonable person, or jury would find adequate to support the conclusion of guilt, or Fed. R. Civ. Proc. admission under rule 8(c). Bailey, at 1065

RESPONSE:  Section 1983 civil relief Supreme Court holding in Maine v. Thiboutot, 448 U.S. 1 (1980)-"Section 1983 Civil Rights Act of 1871 could be used to remedy deprivation of rights created by a federal statute." [1866 Civil Rights Act, Pub. L. stat. 27-30].

Justices ARGUMENT 8:  "The Court lacks a quorum, or the matter cannot be heard under the Court's Next Term."

RESPONSE:  Deliberate indifference is civil rights violation." Baker, 443 U.S. 137 (1979).

I.  Direct Evidence Title III Deprivation of Federal Law & Executive Order 12333 Conspiracy to Conceal and Cover-Up RICO Offense by Federal Executive Branch & Judicial Branch: Joining Federal and State Court Proceedings

*RSMo, S 562.041.1(2) "comprehends any of a potentially wide variety of actions intended by an individual to assist another in criminal conduct." State v. Barnum, 14 S.W.3d 587, 591 (Mo. Banc 2000) (quoting State v. Richardson, 923 S.W.2d 301, 317 (Mo. banc 1966). "If the defendant has affirmative participated in the course of criminal conduct with others, he is responsible for the crimes which he could have reasonably anticipated would have been part of the course of conduct." State v. ward, 247 S.W.3d 686, 694-95 (Mo. App. W.D. 2015).

*RSMo, S 562.014 Conspiracy 1-"Guilt for an offense may be based upon a conspiracy to commit an offense (conceals or cover-up) when a person, with the purpose of promoting or facilitating the commission of an offense agree with another person or persons that they or one or more of then engage in conduct which constitutes such offense.

1. January 20, 2009, defendant, Barack H. Obama sworn into office becoming the 44th President of United States. Defendant, Obama President of the United States under sworn oath of office "...he shall take care the Laws be faithfully executed..." U.S. Const., Article 2, sec. 3.

2. July 23, 2009 and February 24, 2010, Executive Office for United States Attorneys (EOUSA) by and through defendant, William G. Stewart II, Asst. Director, under plaintiffs' Freedom of Information Act 5 U.S.C. 552(a) FOIA. Defendant, Stewart in Request Number 09-959 information requested was not maintained by EOUSA, or by the individual United States Attorney's Office, but is maintained by the Central Intelligence Agency (CIA) and National Security Agency (NSA). Please contact the CIA and NSA directly at the following address.

National Security Agency
Central Intelligence Agency
Deloris Nelson
Information & Privacy Coordinator
Washington, DC 20505

National Security Agency
Pamela N. Phillips
Chief, FOIA/PA Office, DJP4
9800 Savage Road, Ste. 6248
Ft. George G. Meade, MD 20755-6248

1

3.  June 12, 2014, defendant, Michele Meeks, Information and Privacy Coordinator, Central Intelligence Agency, Reference Letter P-2014-00690 in pertinent part:  "Please note, the mission of the Central Intelligence Agency is primarily concerned with foreign intelligence – not domestic –matters. Section 103(d)(1) of the National Security Act…specifically provides that "the agency shall have no police, subpoena, law enforcement powers, or internal security function."

4.  July 23, 2009, Defendant, attorney general Holder's Dep't of Justice in 1-FOIA Request 09-959 disclosure acknowledged the CIA had maintained information relevant to a "domestic –matter" and not "foreign intelligence," CIA violating the National Security Act of 1947 **admitted**.

5.  June 12, 2014, defendant, Meek's Letter continuing in pertinent part: "Executive Order 12333, which regulates the conduct on intelligence activity in the United States and elsewhere, provides that the responsibility for domestic intelligence collection is generally within the province of the Federal Bureau of Investigation. "…no such effort shall be undertaken for the purpose of acquiring information about domestic activities of United Sates persons. Consequently, we decline to process your request."

6.  Defendant, Meeks acknowledging Executive Order 12333 provides "law enforcement powers" to the Federal Bureau of Investigation on "domestic" – "matters" of the United States Criminal Code Title 18.

7.  Defendant, attorney general Holder's Dep't of Justice under 2-FOIA Request 09-959 disclosure acknowledged the CIA and not the FBI investigated plaintiffs and maintained the investigative material affirming the CIA performed "internal-security function" violating the National Security Act of 1947 **admitted**.

8.  June 4, 2014, defendant, Pamela N. Phillips NSA in re: FOIA Case: 78059 letter declining FOIA request in pertinent part: "…NSA/CSS mission is to collect, process, and disseminate communications or signals intelligence information for intelligence and counter intelligence purposes. NSA is authorized to engage in these activities in order to prevent and protect against terrorist attacks…and other hostile activities directed against the United States."

2

9.  February 24, 2010, defendant, attorney general Holder's Dep't of Justice second in 1-FOIA Request 09-959 disclosure acknowledged the NSA maintained "communication," and "signal intelligence information" on the plaintiffs not involving terrorist activity violating United States Signal Intelligence Directive, USSID SP0018 **admitted.**

10.  June 18, 2014, defendant, David M. Hardy agent for the Federal Bureau of Investigation, FBI in re FOIA Request 1265906-000 cited an exemption from FOIA section (b)(7)(E) "this response neither confirms nor denies the existence of your subject's name on any watch lists...no responsive main file records were found."

11.  Defendant, David Hardy's FOIA statement "no responsive main file records were found" in the FBI's search of the department's records. Affirming the CIA and NSA performed "law enforcement" duties prescribed to the FBI under Executive Order 12333, because the CIA and NSA maintained the information "file records" on the "domestic" search and seizures Title III program conducted jointly by the CIA and NSA.

12.  November 20, 2012, defendant, District Judge Charles A. Shaw stated in the memorandum and order the following. "The complaint is comprised of eighty-six pages of rambling, paranoid, and nonsensical allegations regarding a vast and decades-long conspiracy involving the President, the FBI, the CIA, the NSA, the United States Judiciary, the State of Missouri, AT&T, and other governmental and non-governmental organizations to spy on plaintiffs because of suspected terrorist activities."

13.  Plaintiffs' alleged in the complaint "Title III spying," but never alleged the reason centered-around suspected "terrorist activity." Defendant, Shaw acknowledging the court's reason for granting the Fourth Amendment warrant was purportedly based upon fraudulent "probable cause...oath or affirmation" by the U.S. Attorney's Office or FBI alleging "terrorist activity.".

14.  Defendant(s), Christopher Wray, director of the FBI, or U.S. Attorney Jeffrey Jenson would have "file records" on warrant request(s) and warrant reauthorization over 30-years, notwithstanding defendant, Hardy stating in the letter dated June 18, 2017 "...no responsive main records were found." Id.

3

15.  CIA and NSA directors lacked authority to seek subpoenas and warrants Executive Order 12333 and National Security Act of 1947. Law-enforcement powers solely within the Dep't of Justice or FBI. CIA's agent, defendant Meeks stating in the letter dated June 12, 2014 "the agency shall have no…subpoena, law enforcement power." Dep't of Justice or FBI personnel would have to petition the district court or FISC for Fourth Amendment or FISA 215 warrant.

16.  Circumstantial evidence statement the Dep't of Justice or FBI first secured the warrant on plaintiffs' telephone numbers [landline / cellphones] in order for the NSA to collect metadata on out-going and in-coming phone call numbers only, authorized to be "seized" under warrant.

17. February 24, 2010, defendant, attorney general Holder's Dep't of Justice in the NSA FOIA disclosure acknowledged the NSA "maintained the records" on metadata collected "seized" under the warrant, or the CIA and NSA were conducting a "rogue" Title III operation exercising law enforcement powers without the FBI and Department of Justice having knowledge.

18.  Defendant, Christopher Wray, director of the FBI continues to provide logistical support to the CIA and NSA surveillance [metadata collection / electronic interception] program, in the form of, eavesdropping interception of oral and verbal communications order "seized" under Fourth Amendment or 215 warrant.

19.  June 4, 2014, defendant Phillips NSA agent's in the letter stated the agency "collects and disseminates communications" [metadata] phone numbers out-going and in-coming calls, but not oral communications of the parties.

20.  June 18, 2014, defendant, Hardy response stated "no responsive main file records were found," was a false statement 18 U.S.C. S 1001, because any application for 215 or Fourth Amendment warrant would be in the department's "file records," and "…this response neither confirms nor denies the existence of your subject's name on any watch list." In a play on words, the FBI's agent will not confirm nor deny the plaintiffs' being on a "watch list," warrant application, but, if, the plaintiffs' want to know about being "persons seized" under warrant they have to get by the co-conspirators wearing black robes obstructing discovery.

4

## II.   Defendant's "Tortious Acts" Title III Program Declassification by Agency

21.  January 19, 2017, non-defendant, Francis X Taylor, Under Secretary for Intelligence and Analysis issued **DECLASSIFIED** directive entitled Department of Homeland Security Office of Intelligence and Analysis Instruction: IA-1000 Revision Number 00; and-

(a). This "**UNCLASSIFIED**" directive limits intelligence activity under section III: 1.1.1-(a) Internal terrorism threats, (b) The proliferation of weapons of mass destruction, (c) Intelligence activities directed against the United States, (d) International criminal drug activity, and (e) Other hostile activities directed against the United States by foreign powers, organizations, persons, and their agent. See, e.g. Civil Liberties Protection Officer, sec. 103D(2)(b)(1-5), and Intelligence Community Office of the Inspector General, sec. 103H, charged under the National Security Act to investigate and report Title III felony violations.

## III.   "Tort" Civil Conspiracy to Conceal and Cover-Up Scheme Honest Service Fraud by Officers of the Court and its Functionaries and Fraudulent Waivers

*Accessory First Degree under State Criminal Code: (1) A crime must have been committed by the principal actor [United States Government]. (2) The principal actor must have had the requisite state of mind. (3) The defendant [state, city and county governments, businesses, corporations] must have aided and abetted the commission of the crime. (4) The defendant must have had the purpose of aiding or betting...conduct of principal and requisite state of mind were imputed to the aider and abetter;  State v. Hayes, 105, Mo 76, 16 S.W.514 (1891); generally cases cited note 13 supra.

*A "chain conspiracy" involves several transactions all directed towards a common unlawful objective [Federal district courts' dismissal – links – State circuit court dismissals; and principal agent's appearance and accessory agent's appearance in State circuit court "common unlawful objective" concealment and cover-up, of principal and accessory Title III program interstate conspiracy RICO. Agents [U.S. Attorney for principal United States and Asst. State Attorney General for accessory State of Missouri appearances in State circuit court judicial intimidation rule 2-2.4(c).

5

*"The chain conspiracy is a single conspiracy even though each member of the conspiracy may not know every other member or each member may not be involved in all the activities of the conspiracy." United States v. Warner, 1996 U.S. App. Lexis 12169 (6th Cir. Mich. April 9, 1961). Office of the Solicitor General under the administrations of defendants, Trump and former president Obama executed 4-unsigned waivers during Supreme Court proceedings waiving the right to defend nolo contendere plea against the allegations on appeal **admitted** rule 8(c). At appeals relevant to each waiver filed the Court en banc either denied certiorari review, or "lone qualified Justice(s)" affirming lower court's dismissal citing lack of quorum. "Lone qualified Justice" assigned by Chief Justice, and "lone qualified Justice" affirming citing "lack of quorum" under color of federal law 28 U.S.C. S 1 and 28 U.S.C. S 2109 is an oxymoron.

---

22.  In order, to cover-up the Fourth Amendment warrant authorized by the Eastern Division, the Court en banc employed a systematic scheme to dismiss plaintiffs' civil rights Lawsuit joining Title III felony under color of federal law 28 U.S.C. S 1915(e)(2)(B). Clearly, the Court en banc displaying a lack of "judicial reasoning," "bias," "impropriety, "and lack of judicial "impartiality" due process and equal protection of law deprivation Fifth Amendment.

[*] Note orders of by dismissal entered by United States District Court for the District of Columbia jurisdiction of principal, 18 U.S.C. S 2, defendant, United States authorized the Title III program interstate conspiracy crossing state lines RICO.

Federal Judicial Department: DISTRICT COURT(S) ORDERS

23.  December, 10, 2010, defendant, Chief Judge Perry in re: No. 4:10-CV-2023CDP enters memorandum and order of dismissal S 1915(e)(2)(B).

24.  November 20, 2012, defendant, District Shaw in re: 4:12-CV-2155CAS enters memorandum and order of dismissal S 1915(e)(2)(B).

25.  June 3, 2011, defendant, District Judge Rodney W. Sipple in re: 4:10-CV-2303RWS enters memorandum and order of dismissal S 1915(e)(2)(B).

26.  December 10, 2010, defendant, District Judge Audrey G. Fleissig in re: 4:12-CV-2155AGF enters memorandum and order dismissing S 1915(e)(2))(B).

27.  April 10, 2014, defendant, District Judge Stephen N. Limbaugh in re: No. 4:14-CV-00504SNLJ enters memorandum and order dismissing S 1915(e)(2)(B).

28.  October 24, 2014, defendant, District Judge Henry E. Autrey in re: No. 4:14-CV-01773HEA enters memorandum and order dismissing S 1915(e)(2)(B).

29.  May 23, 2012, defendant, District Judge John A. Ross in re: 4:12-CV0896JAR enters memorandum and order dismissing S 1915(e)(2)(B).

30.  August 14, 2019, defendant, District Judge E Richard Webber in re: 4:19-cv-06149ERW enters memorandum and order dismissing 1915(e)(2)(B).

31.  December 19, 2019, defendant, District Judge Stephen R. Clark in re: 4:19-cv-02328AGF/RLW/SRC enters memorandum and order dismissing plaintiffs' Lawsuit as frivolous S 1915(e)(2)(B) and plaintiff failed to state claim.

32. October 12, 2010, non-defendant, District Judge Amit Mehta in re: No. 1:10-cv-01738 enters order of dismissal S 1915(e)(2).

33.  December 3, 2010, defendant, District Judge Richard W. Roberts in re: No. 10-1738 enters order dismissing S 1915(e)(2)(B) stating the following: "Leave to file is DENIED" per curiam.

Federal Judicial Department: UNITED STATES SUPREME COURT ORDER(S)

[*Dropped Parties" for purposes of State circuit court proceedings Associates Justices, Ruth Ginsburg, Sonia Sotomayor, Samuel Alito, Stephen Breyer, and Brett Kavanaugh, notwithstanding participation en bans denying certiorari review Chief Justice Roberts failed to perform "fiduciary duty" as supervisor, or Assoc. Justices took no part in decisions made by "lone qualified Justice(s)" assigned by Chief Justice. [Once assigned by Chief Justice "lone qualified justice" citing a lack of quorum 6-Justices 28 U.S.C. S 1 constituted honest service fraud].

34.  October 11, 2011, JOHNSON, et al v. UNITED STATES, et al No. 10-10652, defendant, Associate Justice, Elena Kagan" lone qualified Justice" citing 28 U.S.C. S 1 lack of quorum affirming court of appeals dismissal 28 S 2109 per curiam.

35.  October 1, 2018, JOHNSON, et al v. UNITED STATES, et al No. 17-8910, defendant, Assoc. Justice Neil Gorsuch "lone qualified Justice" citing 28 U.S.C. S 1 lack of quorum affirming court of appeals' dismissal 28 U.S.C. S 2109 per curiam.[5].

36.  October 6, 2014, JOHNSON, et al v. UNITED STATES, et al No. 13-10381, defendant, Supreme Court en banc denying certiorari review per curiam.

37.  December 7, 2017, JOHNSON, et al v. UNITED STATES, et al No. 17-6524, defendant, Supreme Court en banc denying certiorari review per curiam.

---

5

November 2, 2018, defendant, Scott Harris, Clerk by and through his agent Herve Bocage enters Judgment/Mandate states the following: "Attached please find a certified copy of the judgment of this Court in the above-entitled case."

---

38.  October 1, 2018, defendant, Scott S. Harris, Clerk in re No. 17-8910 enters the court's judgement and mandate under certification: "**THIS CAUSE** having been submitted on the petition for writ of certiorari and the response thereto," is a false statement by defendant, Harris 18 U.S.C. S 1001.

39.  June 7, 2019, defendant, Solicitor General Noel J. Francisco in re: No. 17-8910 executed an unsigned waiver stating the following: "**WAIVER** The Government hereby waives its right to file a response to the petition in this case, unless requested to do so by the Court." Defendant, Francisco disputing defendant, Scott certifying under Seal [Clerk of the Supreme Court of the United States] No. 17-8910 "submitted on the petition and response thereto."

40.  June 27, 2014, defendant, Donald B. Verrilli, Jr., former Solicitor General executed an unsigned waiver in re No. 13-10381 waiving the Government's right to file a brief in opposition at appeal on plaintiffs' petition [writ of certiorari].

41.  June 23, 2011, defendant, Verrilli, Jr., former Solicitor General executed a second unsigned waiver in re No. 10652 waiving the Government's right to file a brief in opposition at appeal on plaintiffs' petition [writ of certiorari].

42. November 7, 2017, defendant, Francisco Solicitor General executed a second unsigned waiver in re 17-6524 waiving the Government's right to file a brief in opposition at appeal on plaintiffs' petition [writ of certiorari].

State Judicial Department: STATE CIRCUIT COURT ORDER(S)

*"Minimum Contact" Between Principal United States and Accessory State of Missouri by and Through Their Agents [Attorneys].

43. In re: 13SL-MU-00991 defendant(s), Asst. United States Attorney Nicholas P. Llewellyn and Unknown Doe, Asst. State Attorney General appeared in State circuit court before defendant, Circuit Judge Dennis N. Smith, Division 40. Attorney appearance(s) in circuit court without service of process of complaint and summons by clerk's office [in forma pauperis proceeding], and absent service of process of the complaint and summons by plaintiffs.

44. January 31, 2014, defendant, Circuit Judge Collen Dolan in re 14SL-MC-01531 in camera enters order and judgment dismissing. Plaintiffs and attorneys for principal United States and accessory State of Missouri did not appear in open court.

44. February 6, 2017, plaintiffs, Jeffrey L.G. Johnson and Joseph Johnson file for rehearing in re No. 14SL-MU-01531 set for hearing March 7, 2014.

45. March 7, 2017, defendant, Judge Dolan in re No. 14SL-MC-01531 enters order denying plaintiffs' motion for rehearing "pursuant to rule 74.06(6)(d) motion." Defendant, Nicholas P. Llewellyn, Asst. U.S. Attorney, Chief Civil Division, and 2 Unknown Does, Asst. State Attorney Generals appeared in circuit court a second time without service of process.

IV. <u>United States Supreme Court Chief Justice [Final Arbiter] Court of Last Resort for Vindication of Civil Rights "Continuing Tort Claim Doctrine" or "Continuing Violation Doctrine" Effectively Tolled State and Federal Statute(s) of Limitation Unilateral Activity Discrimination and Privacy Deprivation</u>

46. September 29, 2005, defendant, John G. Roberts, Jr., became Chief Justice of the Supreme Court, and final arbiter for vindication of civil rights 1866 Civil Rights Act. 14 State 27-30, section 10-"That upon all questions of law arising

under the provisions of this act a **final** appeal may be taken to the Supreme Court of the United States," assigning of "lone qualified Justice" unilateral action.

47.  Supreme Court due process deprivation Fifth Amendment, Chief Justice in 2-stances assign "lone qualified Justice" in re No. 17-8910 defendant, Justice Gorsuch and No. 10-10652 defendant, Justice Kagan for the Court en banc at **appeal** failed to vindicate deprivation of plaintiffs' civil rights under color of federal law 1866 Civil Rights Act, section 10. Supra.

48.  Principal, United States and accessory State of Missouri deprivation of plaintiffs' civil rights ("cannot be said to occur on any particular day") Morgan, 536 U.S. at 114-117.

49.  Defendant, United States under 2-FOIA disclosures the privacy deprivation was continuing through 2009 – 2010 during defendant, president Obama's administration and Federal and State judicial departments discrimination not granting plaintiff injunctive or prohibition relief 2010 - present;-and-

(a).  "discriminatory acts that are not individually actionable may be aggregated to make out a ("privacy and discrimination claim"), such acts "can occur at any time so long as they are linked in a pattern of actions which continue into the applicable limitation period." O'Connor v. City of Newark, 440 F.3d 125, 127 (3rd cir. 2006) (citing Morgan, 536 U.S. at 105).

50.  Defendant, State of Missouri's "failure to plead or otherwise defend" defaulting rule 55, defendant in Federal district court did not "specifically deny," the Title III program was "continuing" within the jurisdiction of the State of Missouri. Defendant under state law must plead the Title III program **abandoned** by state actors "and by those with whom he or she conspired" principal United States, and accomplices City of St. Louis and St. Louis County; S 562.014.6(1).

---

Civil conspiracies RICO claim may exist in civil case for money damages or equitable relief (...tort claim such as a breach of fiduciary duty)[1]. While civil conspiracy has its own separate elements, it is not distinct cause of action. Breeden v. Hueser, 273 S.W3d 1, 13 (Mo. Ct. App. 2008). It functions to hold the

conspirators jointly and severally liable for underlying improper conduct. 8000 Maryland, LLC v. Hutleigh Fin. Services, Inc., 292 S.W.3d 439, 451 (Mo. Ct. App. 2001). Therefore, the core of the action is not the conspiracy itself, but the wrong done by the acts in furtherance of the conspiracy resulting in damage to plaintiff. Id. The elements of a civil conspiracy claim are (1) two or more persons, (2) an unlawful objective, a (3) meeting of minds,(4) one act in furtherance of the conspiracy and (5) damages. Oak Bluff Partners, Inc. v. Meyer, 3 S.W3d 777, 781 (Mo. 1999). In Missouri, if tortious or improper act alleges as element of a civil conspiracy fail, then the civil conspiracy claim fails as well. Id.

---

   V. Civil Conspiracy Use of Emails to Communicate With "Private Litigants" While Conducting The Public's Business

   51. June 13 2019, defendant, accomplice Gregory J. Linhares, Clerk of Court, in re No. 4:19-cv-01694ERW under CM/ECF notification [Docket Text] disclosed the following: "Email all Attorneys and Additional Recipients (will not send to terminated parties)"; and-

   (a). Defendant, Judge Webber committed wire fraud 18 U.S.C. S 1343 using emails to secretly communicate ex parte with in-state attorneys and out-of-state attorneys, prior too, entering the memorandum and order dismissing the Lawsuit as frivolous 28 U.S.C. S 1915.

   52. August 9, 2019, defendant, Linhares in re No. 4-18-cv-02328AGF in a second CM/ECF [Docket Text] notification disclosed the following: "Email all Attorneys and Additional Recipients (will not send to terminated parties); and-

   (a). Defendants, Judge Fleissig, Judge White and Judge Clark committed wire fraud 18 U.S.C. S 1343 using emails to secretly communicate ex parte with in-state and out-of-state attorneys, prior too, Judge Fleissig recusing, prior too, Judge White disqualifying 'sua sponte and, prior too, Judge Clark entering the memorandum and order dismissing the Lawsuit as frivolous 28 U.S.C. S 1915.

   53. Defendants, Judge(s) Audrey G. Fleissig, Ronnie L. White, Stephen R. Clark, and defendant, Linhares committed wire fraud using emails communicating with

11

"all attorneys, additional recipients and terminated parties" whether in-state or out-of-state participants for purposes of secret communications, the court concealing those contacts honest service fraud during district court proceedings. See, e.g. Good World Deals, LLC v. Gallagher, et al, WD1078 emails, letters or telephone calls from out-of-state party to Missouri are sufficient to subject principal, accessory, accomplice out-of-state party to long-arm jurisdiction in Missouri RSMo, S 506.500.1(3). Based upon the federal court and "all attorneys' "emails" all defendants have "sufficient minimum contacts with Missouri to satisfy due process"; see, e.g. Good World Deals, LLC v. Gallagher, et al, appeal No. WD 81076 (2018). See, e.g. Missouri accessory statute RSMo, S 541.110.

## BACKGROUND PART 1: SUCCESSION OF OFFICE

VI.   <u>Attorney General's Oversight of Intelligence Activity Executive Order 12333</u>

54.  February 3, 2009, defendant, Eric H. Holder, Jr. sworn into office becoming the 82nd Attorney General of the United States. Defendant, Holder head of the Dep't of Justice during the Obama administration was the chief law enforcement officer for the United States Government, at the time, of the EOUSA's disclosures under FOIA. Defendant, Holder's responsibilities as attorney general retained supervisory authority over the Dep't of Justice and oversight over Intelligence Community Members [FBI, CIA and NSA] activities under Executive Order 12333. Defendant, Holder would have supervised or been privy to intelligence gathering during the Obama administration, or intelligence gathering previously supervised by his predecessor(s) former attorney generals.

55.  Defendant, Holder's predecessor was defendant, Michael Mukasey sworn into office November 9, 2007 the 81st Attorney General of the United States during the administration of former president George W. Bush 43rd President of the United States.

56.  August 1, 2005, defendant, Keith B. Alexander sworn into office becoming director of the National Security Agency during former president George W. Bush administration, and continued to serve as director of the NSA during the incoming Obama administration in January of 2009.

57.   February 19, 2009, defendant, Leon Panetta sworn into office becoming the Director of the Central Intelligence. Defendant, Panetta assumed supervision over the CIA's part in conducting the Title III surveillance [electronic interception] program from his predecessor former CIA director George Tenet who served as director during the administrations of former president(s) William J. Clinton 42nd President of the United States, and George W. Bush 43rd President of the United States.

58.   August 9, 2010, defendant, James R. Clapper sworn into office becoming director of National Intelligence, DNI. Defendant, Clapper head of the Intelligence Community served as principal advisor to President Obama on the CIA and NSA Title III surveillance [metadata collection / electronic interception] program.

59.   April 3, 2014, defendant, Admiral Michael Rogers sworn into office becoming NSA director. Defendant, Rogers assumed supervision over the NSA's part in the Title III surveillance [metadata collection] program from his predecessor former director Keith B. Alexander.

60.   April 27, 2015, defendant Loretta E. Lynch sworn into office becoming the 83rd Attorney General of the United States. Defendant, Lynch assumed the supervision over the CIA and NSA's Title III surveillance [metadata collection / electronic interception] program from her predecessor former attorney general Eric H. Holder, Jr.

61.   September 4, 2001 – September 4, 2013, defendant, Robert Mueller served as Director of the Federal Bureau of Investigation, FBI during the administrations of former president(s) George W. Bush and Barack H. Obama. Executive Order 12333 the director of the FBI to provide logistical support to lawful intelligence, or counterintelligence gathering conducted inside the United States by the CIA and NSA. Defendant, Mueller more-likely-than-not assumed the supervision over the FBI's logistical support given the CIA and NSA's Title III surveillance [metadata collection / electronic interception] program from his predecessor former director Louis Freeh.

62.   September 4, 2013, defendant James Comey sworn into office becoming FBI director during the former administration of president Obama. Defendant,

13

Comey assumed supervision over the FBI's logistical support given the CIA and NSA's Title III surveillance [metadata collection / electronic interception] program from his predecessor former director Robert Mueller. Defendant, Comey temporarily served as FBI director under the administration of defendant, Trump 45th President of the United States.

63. 2009 -2010, Dep't of Justice FOIA disclosures of the Title III program "links" Obama and Trump administrations. See, e.g. 42 U.S.C. S 1986 Action for Neglect to Prevent-"Every person who, having knowledge that any of the wrongs conspired to be done (42 U.S.C. S 1985) are about to be committed and having power to prevent or aid in preventing the commission of same…"

VII.   Predecessor and Successor(s) Joined In Civil Lawsuit 28 U.S.C. S 1981 sec. 1131 Substitution of Parties; see, e.g. Missouri Rules of Civil Procedures 52.13(d) Substitution of Parties

*In-Coming Executive Branch Administration 42 U.S.C. S 1985 and section S 1986 Failure to Prevent Continued Deprivation of Civil Rights.

64. January 20, 2017, defendant, Donald J. Trump sworn into office becoming the 45th President of the United States. Defendant, Trump President of the United States under sworn oath of office "…he shall take care the Laws be faithfully executed…" U.S. Const. Article 2, sec. 3. Defendant, Trump continued the CIA and NSA's Title III electronic [metadata / electronic interception] program disclosed during the Obama administration. Defendant, Trump's administration issued an "**UNCLASSIFIED**" directive entitled Department Homeland Security Office of Intelligence and Analysis Instruction: IA-1000 Revision Number 00 Issue Date 01/19/2017. Office of Intelligence and Analysis Intelligence Program & Guidelines; see, e.g. outlining (5) areas of lawful intelligence gathering, and the intelligence gathering against the plaintiffs' did not fall within the unclassified directive.

65. February 9, 2017, defendant, Jeff Sessions sworn into office becoming the 84th Attorney General of the United States. Defendant, Sessions assumed supervision over the CIA and NSA's Title III surveillance [metadata collection / electronic interception] program from his predecessor former attorney general Loretta Lynch.

14

66. January 23, 2017, defendant, Mike Pompeo sworn into office becoming CIA director. Defendant, Pompeo assumed supervision over the CIA's part in conducting the Title III surveillance [electronic interception] program from his predecessor former CIA director John O. Brennan.

67. March 16, 2017, defendant Daniel R. Coats sworn into office becoming DNI director. Defendant, Coats head of the Intelligence Community served as principal adviser to President Trump on the CIA and NSA's Title III surveillance [metadata collection / electronic interception] program. Defendant, Coats assumed supervision over the Title III program from his predecessor former DNI director James R. Clapper.

68. May 4, 2018, defendant, Paul Nakasome sworn into office becoming NSA director. Defendant, Nakasome assumed supervision over the NSA's part in conducting the Title III surveillance [metadata collection] program from his predecessor former director Admiral Mike Rogers.

69. May 21, 2018, defendant Gina C. Haspel sworn into office becoming CIA director. Defendant, Haspel assumed supervision over the CIA's part in conducting the Title III surveillance [electronic interception] program from her predecessor former CIA director Mike Pompeo.

70. August 2, 2017, defendant Christopher A. Wray sworn into office becoming FBI director. Defendant, Wray assumed supervision over the FBI's logistical support given the CIA and NSA Title III surveillance [metadata collection / electronic interception] program from his predecessor former FBI director James Comey.

71. February 14, 2019, defendant William Barr sworn into office becoming the 85th Attorney General of the United States under the Trump administration, and defendant, Barr served as the 77th attorney general during former president George H.W. Bush's administration. Defendant, Barr previously supervised the CIA and NSA's Title III surveillance [metadata collection / electronic interception] program during the administration of former president Bush administration from 1989-1993. Defendant, Barr's second tenure as attorney general in the Trump administration, once again, resumed his supervision over the CIA and NSA's Title

15

III surveillance [metadata / electronic interception] program from his predecessor former attorney general Jeff Sessions.

72. August 16, 2019, defendant Joseph Maguire sworn into office becoming DNI director. Defendant, Maguire head of the Intelligence Community serves as principal advisor to President Trump on the CIA and NSA's Title III surveillance [metadata / electronic interception] program. Defendant, Maguire assumed supervision over the Title III surveillance program from his predecessor former DNI director Daniel Coats.

73. 2-FOIA Request No. 09-959 excerpts in pertinent part: "You requested information which is not maintained by the EOUSA or by the individual United States Attorney's Offices, **but is maintained by the Central Intelligence Agency, CIA and National Security Agency, NSA**."

74. January 20, 2009, incoming Obama administration acknowledged under 2-FOIA disclosures July 23, 2009 and February 23, 2010 information already in existence seized and maintained by the CIA and NSA, prior too, Obama the 44th President of the United States taking the oath of office on January 20, 2009.

75. Out-going administration "maintained file records" of the CIA and NSA [metadata collection / electronic interception] Title III program, and FBI's wiretap search and seizure of plaintiffs' oral communications preserved for in-coming Trump administration.

### BACKGROUND PART 2: FIRST CONTACT

VIII. <u>State Circuit Court and Federal District Court Proceedings Substantial & Circumstantial Evidence Supports Onset of Title III Surveillance [NSA's Metadata Collection / CIA's Electronic Interception / FBI's Wiretap] Program</u>; and-

(a). Discovery denied by the Federal district court based upon memorandum and orders of dismissals the Title III program commencement month/date/year is based upon circumstantial evidence and "cannot be said to occur on any particular day"; Morgan, 536 U.S. at 114-117.

76. June 25, 1987, defendant, Law Firm Julius H. Berg & Assoc., by and through defendant, attorney Andrew S. Berg caused the filing estate of P.D. Johnson No.

16

3-87-0974-P-D. State Circuit Court Twenty Second Judicial Circuit, Probate Division, City of St. Louis, Missouri; and-

(a). Julius H. Berg and Assoc. and Vandelia W. Johnson contract joint and several RSMo, S 431.110 terms of agreement 'settlement of estate for payment of attorney fee'.

77. Estate No. 3-87-0974-P-D listed estate members Vandelia W. Johnson, surviving spouse, Personal Representative, and 8-children; see, e.g. footnote 1: Among the children listed in the estate were the plaintiffs [Jeffrey L.G. Johnson and Joseph Johnson]. 2009 - 2010, Dep't of Justice, EOUSA 2-FOIA disclosure Request(s) 09-959 referenced plaintiff Joseph Johnson.

78. March 3, 1988, plaintiff, Vandelia W. Johnson murdered while an in-patient SSMHealth St. Louis University Hospital, prior too, settlement of estate No. 3-87-0974-P-D contract still in effect "privy of contract."

79. Defendant, Julius H. Berg & Assoc. by and through attorney Andrew Berg, prior too, settlement of the estate defendant, attorney Berg sued in State circuit court, Division 1, to withdraw and for attorney fee rule 51.05, suing non-contractual estate member Rita J. Johnson [Third-Party] under Notice of Hearing.[6]. "...there shall be one form of action to be known as "civil action" rule 42; and-

(a). October 18, 1988, defendant, attorney Andrew Berg's motion filed in the probate division sought relief change of judge from the probate division rule 51.05, in pending and ongoing proceedings since 1987 violating the "no prior commencement," motion to be within "30-days of assigning of judge" provision of rule 51.05(b).

---

6

Defendant, attorney Berg's suit and memorandum and order in the State circuit court were captioned Estate of P.D. Johnson, deceased vs. Rita J. Johnson, Personal Representative. Not Julius H. Berg & Assoc., LLC v. Vandelia W. Johnson, deceased, Personal Representative those parties [privy of contract] to sue and be sued.

17

80.   October 28, 1988, defendant, Brendan R. Ryan, Circuit Judge, Division 1, granted defendant, attorney Andrew Berg's motion to withdraw and awarded attorney fee $1,818.75.

81.   December 5, plaintiffs' filed its motion to reconsider order by defendant, Ryan, Notice of Hearing served upon defendant, Julius H. Berg & Assoc., LLC c/o attorney Andrew S. Berg set for hearing December 12, 1988.

82.   December 12, 1988, plaintiffs' motion called and heard defendant, Circuit Judge Ryan denied plaintiffs' motion and sustained the prior judgment in the court's memorandum and order entered October 28, 1988.

83.   December 16, 1988, according to plaintiffs' records filed for appeal Court of Appeals, Eastern District of Missouri.

84.   December 27, 1988, plaintiffs' appeal denied per curiam entered on probate division Docket Sheet no service of process by clerk's office.

85.   March 8, 1989, in the same month of plaintiffs Vandelia W. Johnson's death in March of 1988 estate members sued in Federal district court, Eastern Division.

86.   In March of 1989, defendant, James G. Woodward, Clerk of Court, did not execute notice of fling and assigned case number defendant, Frederick R. Buckles, Magistrate Judge, in lieu of the U.S. Mail directed U.S. Marshall Forms to plaintiffs to fill-out. Defendant, Buckles secretly quit the proceedings no order recuing under service provided by clerk's office.

87. [Month/date/year name omitted] **THIS SECTION INTENTIONALLY LEFT BLANK PRESERVED FOR IMPEACHMENT PURPOSES:**

88.   Defendant, [Line # 87] entered an order denying plaintiffs' civil rights action and first instance plaintiffs' alleging allegation of the Title III program.

89.   February 3, 1999, defendant, [Line # 87] along with state appellate judges William H. Crandall, Jr., and Clifford H. Ahrens 10-years later entered orders as appellate judges, Missouri Court of Appeals, in re State v. Little, crim. 74123 ED.

90.   Defendant, [Line # 87] while serving as state appellate judge entered an order under the Seal of the district court, Eastern Division impersonating being a

18

Federal magistrate judge violating Federal false impersonation statute 18 U.S.C. S 912.

91.  Defendant, Woodward, Clerk of Court knew defendant, [Line # 87] was not a Federal magistrate judge, Eastern Division in 1989, but defendant Woodward used the U.S. Mail to deliver the fraudulent order to the plaintiffs committing mail fraud 18 U.S.C. S 1341.

92.  Non-defendant, District Judge "dropped party" entered 2-orders denying review of the order entered by state actor, defendant [Line # 87].

93.  [Month/date/year name omitted] **THIS SECTION INTENTIONALLY LEFT BLANK PRESERVED FOR IMPEACHMENT PURPOSES**.

94.  Defendant, [Line # 93] while a district judge entered an order under the public office Chief Judge and Seal of the Court of Appeals, Eastern Division, false impersonation violating 18 U.S.C. S 912.

95.  Defendant, James Woodward, Clerk of Court knew defendant, [Line # 93] was not the chief judge of the Court of Appeals, because Donald P. Lay was the Chief Judge 1979 - 1992, but defendant Woodward used the U.S. Mail to deliver the fraudulent order to the plaintiffs committing mail fraud 18 U.S.C. S 1341.

96.  Defendant, Associate Justice, Clarence Thomas "circuit Justice" assigned the Eastern Division in 1989, at the time, state actor, defendant [Line # 87] and federal actor, defendant [Line # 93] impersonated being the Chief Judge court of appeals, Eastern Division violating 18 U.S.C. S 912.

97.  [In Re: Case No. and caption omitted] **THIS SECTION INTENTIONALL LEFT BLANK FOR IMPEACHMENT PURPOSES.**

98.  Non-defendant, William K. Suter, former clerk of Supreme Court issued service of case [Line # 97] filed and set for hearing by Supreme Court (tenure former Chief Justice William H. Rehnquist).

99.  December 16, 1991, non-defendant, former Solicitor General of the United States Kenneth W. Starr issued under service via U.S. Mail a signed waiver in re No. [Line # 97].

19

100.  There was no prior "personal contact" between plaintiffs and defendant, United States, prior too, the estate probate division proceedings in 1987, State circuit court proceeding in 1988 and federal district court proceedings in 1989.

101.  December 8, 2010, non-defendant, District Judge "dropped party" [Line # 92] enters an order recusing stating the following: "Due to conflict of interest, this Court herby recuses from this case. This Court will be assigned to another judge in re 4:10-cv-02303---/JCH.

IX.  Circumstantial Evidence: "**Federal Actors**" Predecessor Presidents, Heads of Agencies & Departments Violating EO 12333, National Security Act of 1947 & USSID 18: Successor Office Holders Post Title III FOIA Admission; see, e.g. Section VII, Lines 64-75

102.  January 20, 1981 - January 20, 1989, non-defendant, INDIVIDUAL 1, former 40th President of the United States his term in office coincides with the "first contact" between plaintiffs and principal, 18 U.S.C. S 2 in 1988 -1989.

103.  February 25, 1985 – July 5, 1988, non-defendant, INDIVIDUAL 2, sworn into office becoming the 75th Attorney General of the United States. Non-defendant INDIVIDUAL 2, more-likely-than-not carried-out the directive of non-defendant, INDIVIDUAL 1, that the former attorney general implement the CIA and NSA Title III surveillance [metadata collection / electronic interception] program, prior too, non-defendant, INDIVIDUAL 1, last official days as President of the United States; and-

(a).  August 15, 1988 – August 15, 1991, non-defendant, INDIVIDUAL 3, sworn into office becoming the 76th Attorney General of the United States. Non-defendant, INDIVIDUAL 3, continued to supervise the CIA and NSA Title III surveillance [metadata collection / electronic interception] program overseen by his predecessor non-defendant, former attorney general, INDIVIDUAL 2.

104.  May 26, 1987, non-defendant, INDIVIDUAL 4, sworn into office becoming CIA director. Non-defendant, INDIVIDUAL 4, more-likely-than-not was tasked by non-defendant, INDIVIDUAL 3, former attorney general to oversee the CIA's part in implementing the CIA's surveillance [electronic interception] program; and-

20

(a).  September 1, 1991 – January 20, 1993, 2-successors non-defendant, CIA directors continued the supervision over the CIA's part in the Title III surveillance [electronic interception] program.

105.  August 15, 1988, non-defendant, INDIVIDUAL 5, sworn into office becoming NSA director. Non-defendant, INDIVIDUAL 5, more-likely-than-not was tasked by non-defendant, INDIVIDUAL 3, former attorney to supervise the NSA's part initially implementing the NSA's Title III surveillance [metadata collection] program.

106.  November 2, 1987, non-defendant, INDIVIDUAL 6, sworn into office becoming FBI director. Non-defendant, INDIVIDUAL 6, as FBI director initially provided logistical Law Enforcement support to the CIA and NSA Title III surveillance [metadata collection / electronic interception] program at its conception authorized by non-defendant former president, INDIVIDUAL 1.

107.  January 20, 1989, non-defendant, INDIVIDUAL 7, sworn into office becoming the 41st President of the United States. Non-defendant, INDIVIDUAL 7, more-likely-than-not as president continued the CIA and NSA Title III surveillance [metadata collection / electronic interception] program first authorized by his predecessor former president non-defendant, INDIVIDUAL 1.

108.  1991 – 1993, defendant, William P. Barr sworn into office becoming the 77th Attorney General of the United States. Defendant, Barr continued to supervise the CIA and NAS surveillance [metadata collection / electronic interception] program of his predecessor non-defendant former attorney general, INDIVIDUAL 3; and-

(a).  January 20, 1989 – January 20, 1993, non-defendants, INDIVIDUAL 4, former CIA director and non-defendant, INDIVIDUAL 5, former NSA director retained supervision over the CIA and NSA's Title III surveillance [metadata collection / electronic interception] program during the administration of non-defendant, former president INDIVIDUAL 7's administration.

109.  November 2, 1987 – July 19, 1993, non-defendant, INDIVIDUAL 8, sworn into office becoming FBI director. Non-defendant, INDIVIDUAL 8, as FBI director continued to provide logistical Law Enforcement support to the CIA and NSA

21

surveillance [metadata collection / electronic interception] program overseen by his predecessor non-defendant former FBI director, INDIVIDUAL 6.

110.  January 20, 1993, non-defendant, INDIVIDUAL 9, sworn into office becoming the 42nd President of the United States. Non-defendant, INDIVIDUAL 9, as president continued the CIA and NSA's Title III surveillance [metadata collection / electronic interception] program of his predecessor non-defendant former president, INDIVIDUAL 7.

111.  March 11, 1993, non-defendant, INDIVIDUAL 11, sworn into office becoming the 78th Attorney General of the United States. Non-defendant, INDIVIDUAL 11, as attorney general continued to supervise the CIA and NSA surveillance [metadata collection / electronic interception] from her predecessor defendant, former and current attorney general William P. Barr.

112.  September 1, 1993, non-defendant, INDIVIDUAL 12, sworn into office becoming FBI director, Non-defendant, INDIVIDUAL 12, as FBI director continued to provide logistical Law Enforcement support to the CIA and NSA surveillance [metadata collection / electronic interception] program overseen by his predecessor non-defendant former FBI director, INDIVIDUAL 8.

113.  January 20, 2001, non-defendant, INDIVIDUAL 13, sworn into office becoming the 43rd President of the United States. Non-defendant, INDIVIDUAL 13 as president continued the CIA and NSA's Title III surveillance [metadata collection / electronic interception] program of his predecessor non-defendant former president, INDIVIDUAL 9.

114.  February 3, 2005, non-defendant, INDIVIDUAL 14, sworn into office becoming the 80th Attorney General of the United States. Non-defendant, INDIVIDUAL 14, as attorney general continued to supervise the CIA and NSA surveillance [metadata collection / electronic interception] program from his predecessor, defendant former and current attorney General William P. Barr.

115.  November 9, 2007, non-defendant, INDIVIDUAL 15, sworn into office becoming the 81st Attorney General of the United States. Non-defendant, INDIVIDUAL 15, as attorney general continued to supervise the CIA and NSA Title III surveillance [metadata collection / electronic interception] program from his

predecessor non-defendant former attorney general, INDIVIDUAL 14.

116.  August 14, 2019, defendant, United States issued service of plaintiff complaint and summons, defendant failed to "plead or otherwise defend" within 60-days of service of process rule 12(a)(C)(3). Defendant failed to "defend" against the allegations on or before October 16, 2019 defaulting rule 55. Defendant's motion to dismiss filed October 23, 2019 citing plaintiff failed to state a claim upon which relief can be granted was "time barred" rule 12(a)(C)(3).

117.  October 23, 2019, defendant, U.S. Attorney Jensen's motion to dismiss was "time barred" rule 12(a)(C)(3), and under agency regulation USAM 4-4.210-"United States attorney should be vigilant in moving to dismiss in the district Court." Bowen v. Massachusetts, 487 U.S. 879, 910 n48 (1988).

118.  Defendant, Jensen's predecessor defendant, U.S. Attorney Richard G. Callahan in Federal district court collection of cases [Lines 23-29] did not file "to dismiss, defendant, United States did voluntarily forego waiving the right and privilege under USAM 4-4.210.

119.  May 12, 2017, post Federal district court proceedings [Lines 23-29] defendant, United States filed its motion "to dismiss" in the United States Court of Federal Claims before an improper venue rule 12(b)(3) contravening USAM 4-4.210 the motion to dismiss should be filed in district court. Id. Line 117.

120.  October 23, 2019. Defendant, United States' motion to dismiss in district court before defendant, Judge Clark non-justiciable controversy defendant's motion to dismiss contravening USAM 4-4.210: "That which cannot be the subject of judicial decision. That which is an inappropriate subject for judicial consideration." See, e.g. Baker v. Carr, 369 U.S. 186, 82 S. Ct. 691, 7 L.Ed.2d 663; "and is not the subject matter of judicial determination." See, e.g. United States v. W.T. grant co., 345 W 629, 73 S Ct. 894, 97 L.Ed 1303.

X.  **"State Actors"**; See, e.g. Missouri Accessory Statute S 541.110

*RSMo, S 26.130.2-"Such agency or department as may be designated shall have authority to investigate, cooperate and protect the state's interest subject to the advice and approval of the governor."

*RSMo, S 27.060 state attorney general to "answer or defend" the state's legal interest, and attorney general represents the legal interest of defendants, City of St. Louis and St. Louis County exercising the State's "police powers"; and-

(a). Section 27.040 in pertinent part: "When required, he shall give his opinion, in writing...to any circuit or prosecuting attorney upon any question of law relative to their respective offices or the discharge of their duties."[7]].

---

7

"Opinion of the attorney general are entitled to no more weight that that given the opinion of any other competent attorney." Gersham Investment Corp., v. Danforth, (Mo) 517 S.W.2d 33

---

121.  January 12, 2009 –January 9, 2017, defendant, Jeremiah W. Nixon, sworn into office becoming the 55th governor of the State of Missouri. Defendant, Nixon as governor failed to perform his statutory "fiduciary duty" RSMo S 26.130.2, prior too, leaving the office as governor. Defendant, Nixon not assigning an "agency," or "department" head to investigate the principal United States' Title III program admission under FOIA "tortious acts" occurring within the jurisdiction of the State of Missouri [accessory S 541.110].

122.  January 12, 2009 – January 9, 2017, defendant, Chris Koster, sworn into office becoming the 31st State Attorney General. Defendant, Koster as attorney general failed to perform his statutory "fiduciary duty" RSMo, S 27.040, prior too, leaving the office as attorney general. Defendant, Koster did not give his "written opinion" to the circuit and prosecuting attorney on "questions of law" tortious acts committed within the jurisdiction of the State, City of St. Louis and St. Louis County concerning the principal United States' Title III program admission under FOIA; and-

(a).  Defendant, Koster accessory S 541.110 by and through the Office of the State Attorney General its agent defendant, Unknown, Doe, Asst. State Attorney General accessories S 541.110, defendants RSMo, S 27.060 failed to defend the "state's legal interest" during State circuit court proceeding 21st Judicial Circuit

24

before defendant(s) Circuit Judge Dennis N. Smith and Collen Dolan.

123.  January 9, 2017, non-defendant, INDIVIDUAL 16, sworn into office becoming the 56th governor of the State of Missouri. Non-defendant, INDIVIDUAL 16 "dropped party" resigned the office of governor, prior too, completion of First Term unable to perform "fiduciary duty" as governor not deemed accessory S 541.110. Defendant, INDIVIDUAL 16, unable to assign "agency," or "department" to investigate RSMo, S 26.130.2 the principal United states' Title III program admission under FOIA "tortious acts" occurring within the jurisdiction of the State of Missouri

124.  January 9, 2017, defendant, Josh Hawley, sworn into office becoming the 42nd attorney general for the State of Missouri. Defendant, Hawley as attorney general, prior too, leaving public office and assuming the duties as United States Senator from the State of Missouri. Defendant, Hawley accessory S 541.110 failed to perform his "fiduciary duty" under RSMo, S 27.040 not giving his "written opinion" to the circuit and prosecuting attorney on "questions of law" tortious acts committed within the jurisdiction of the State, City of St. Louis and St. Louis County concerning the principal's Title III program admission under FOIA.

125.  June 1, 2018 - present, non-defendant, Michael Parsons, sworn into office becoming the 57th governor of the State of Missouri. Defendant, Parsons under succession of public office his "fiduciary duty" under RSMo, S 27.060 and S 27.040 as current office holder [governor] continuing and ongoing defendant not deemed accessory while in office RSMo, S 541.110.

126.  June 3, 2019 - present, non-defendant, Eric Schmitt, sworn into public office becoming the 43rd attorney general for the State of Missouri. Defendant, Schmitt under succession of public office his "fiduciary duty" under RSMo, S 27.060 and S 27.040 as current office holder [attorney general] continuing and ongoing not deemed accessory while in office RSMo, S 541.110.

XI.  **"City Actors," and "County Actors"** Accomplices

*RSMo, S 77.260-"The mayor...of each city...shall have power to enact and ordain any and all ordinances not repugnant to the constitution and laws of this state...for the good government of the city, the preservation of peace and good

order." See, e.g. circuit attorney and county prosecutor "fiduciary duty" RSMo, S 56.060.1 and RSMo, S 56.070.

\*Mayors, County Executive, Circuit Attorney and County Prosecutor predecessor / successor did not physically perform the acts which constituted the crime, but only aided and abetted the principal actor of the offense." Mo. Crim. Code SS 562.036,-051; and-

(a). City of St. Louis, and St. Louis County in Federal district court did not file "affirmative defense of withdrawal to absolve…from liability by trying to prevent the crime." Id. S 562.041.2(3). Citing Montell, 436 U.S. 658, 98 City of St. Louis and St. Louis County "**decisions**" exercising the State's "police powers" to aid and abet principal United States' Title III program within its jurisdiction(s) "affected the plaintiffs' civil rights.' Id, at 690-91, 98 S. Ct. at 2036.

127. August 30, 2019, defendant, City of St. Louis' motion to dismiss citing plaintiff failed to state a claim upon which relief can be granted was "nullity" insufficient "affirmative defense" not absolving liability. Post Title III admission by the principal acknowledging the criminal conduct in 2009 – 2010 FOIA disclosures. Defendant, City of St. Louis under Missouri's conspiracy statute RSMo, S 562.014.6(1) City of St. Louis in its motion to dismiss failed to plead its participation in the criminal conduct of the principal had been "**abandoned**"; and-

(a). Section 567.041 imposes accomplice liability on one who "aids or agrees to aid or attempts to aid" a person who commits a crime.

128. April 17, 2001, defendant, Francis G. Slay, sworn into office becoming the 45th mayor of the City of St. Louis. Defendant, Slay as mayor exercising the State's "police powers" acted as an accomplice in aiding and continuing the principal's Title III program within the jurisdiction of the City of St. Louis under his tenure ending April 18, 2017.

129. April 18, 2017 - present, defendant, Lyda Krewson, sworn into office becoming the 46th mayor of the City of St. Louis. Defendant, Krewson as mayor exercising the State's "police powers" failed to perform "fiduciary duties" S 27.260 conduct "repugnant to the constitution and laws of this state" [Article I, Section 15 / Missouri conspiracy statute RSMo, 562.014]. Defendant continued to

26

supervise the city's part in the principal United States' Title III program within the jurisdiction of the City of St. Louis from her predecessor former mayor defendant, Slay.

130.  Defendant, City of St. Louis its motion to dismiss failed to plead an "affirmative defense" ordinance, or policy supporting defendant right to aid in principal's Title III conduct, when the Title III program was repugnant against plaintiffs' right to privacy under the constitution Article I, sec. 15 and state law Missouri Crime Victim's Statute RSMo, S 595.209.

## COMITY [STATE COURT JURISDICTION]

XII.  USAM, sec. 9-60.202(5) "No Professional Should Escape Prosecution When a Prosecutable Case Exist; Section 9-60.202(5) Preempts Office of Legal Counsel Memorandum of October 16, 2000 Sitting President Cannot be Indicted

*Clinton v. Jones established a sitting president is subject to civil suit in federal court for conduct alleging prior violation(s) of State law; in law, comity recognition of legislative, executive and judicial acts. Office of Legal Counsel's memorandum does not "void" State's enumerated right Tenth Amendment to enforce it laws [civil and criminal statutes] in State circuit court for "torts" violation of State law.

131.  January 17, 1976, non-defendant, INDIVIDUAL 17, sworn into office becoming circuit attorney for the City of St. Louis. Defendant, INDIVIDUAL 17's tenure as circuit attorney predated principal United States' Title III admission under FOIA in 2009 – 2010, but defendant more-likely-than-not had knowledge of and supervised the city's participation in the Title III program at the onset.

132.  April 17, 2001, defendant, Jennifer M. Joyce, sworn into office becoming circuit attorney for the City of St. Louis. Defendant, Joyce's tenure as circuit attorney predates and was continuing when, plaintiff United States' acknowledged the Title III admission in 2009 – 2010 under FOIA disclosures. Defendant, Joyce upon leaving office in 2016 continued to "conceal and cover-up" the Title III program within the jurisdiction of the City of St. Louis, based upon her predecessor former circuit attorney, non-defendant INDIVIDUAL 17's knowledge

27


of the Title III program.[8].

_____

8

Post retirement interview excerpt: "I love the Circuit Attorney's Office, and the mission of the Circuit Attorney's Office...to pursue justice."

_____

133.  January 1, 2019 – present, defendant, Kimberly M. Gardner, sworn into office becoming circuit attorney for the City of St. Louis. Defendant, Gardner as circuit attorney deemed accessory S 541.110 in principal United States' Title III program. Circuit Attorney's statutory "fiduciary duty" as current office holder RSMo, S 56.450 "The circuit attorney of the City of St. Louis shall...manage and conduct all criminal cases..." Circuit Attorney's Office issued plaintiffs' complaint and summons civil discovery rule 26 and Missouri Crime Victim's Statute [Article I, Section 32.1(7); see, e.g. RSMo, S 595.209. Information not subject to confidentiality "materially relevant" to principal United States' Title III program and plaintiffs' civil rights Lawsuit Section 1983.

134.  January 1, 2019 – present, defendant, Wesley Bell, sworn into office becoming prosecuting attorney for St. Louis County. Defendant, Bell as county prosecutor deemed accessory S 541.110 in principal United States' Title III program statutory "fiduciary duty" RSMo, S 56.070 "Each prosecuting attorney shall commence and prosecute all civil and criminal actions in the prosecuting attorney's county in which the county or state is concerned...except in counties in which there is a county counselor. Defendant, Bell failed to comply with civil discovery for information rule 26 and Missouri Crime Victim's Statute [Article I, Section 32.1(7); see, e.g. RSMo, S 595.209. Information not subject to confidentiality "materially relevant" to principal United States' Title III program and plaintiffs' civil rights Lawsuit Section 1983.

135.  April 13, 2017, defendant, Julian Bush sworn into office becoming city counselor for the City of St. Louis. Defendant, Bush's "fiduciary duty" RSMo, S 98.340-"...that any city ordinance, provides for the office of city counselor, such city counselor, when so provided for, shall represent the city in all other cases in

all courts of record in this state…"

136.   Defendant, Bush knew or should have known defendant, City of St. Louis' "**decision**" exercising the State's "police powers" to assist principal United States' Title III program within the jurisdiction of the City of St. Louis "affected plaintiffs' civil rights." Montell, Id, at 690-91, 98 S. Ct. at 2036; and-

(a).   Section 1983 Civil Rights Act of 1871 allowed plaintiffs' Lawsuit based upon defendant, City of St. Louis' **decision** accessory RSMo, S 541.110. Id. {Line # 135]. Notwithstanding, defendant, Bond asserting by and through attorney Erin McGowan's motion to dismiss "plaintiff failed to state a claim against the City of St. Louis upon which relief can be granted"; and-

(b).   Plaintiffs' injury "in fact" cognizable claim Section 1983. Defendant, City of St. Louis by and through its attorney in a responsive pleading rule 8(c) must "specifically deny," the allegation the Title III was continuing within the jurisdiction of the City of St. Louis **admitted**. The Title III program acknowledged by the principal the City of St. Louis accessory S 541.110 had been "**abandoned**" its participation S 562.014.6(1).

(c).   Defendant, Judge Clerk memorandum and order granting dismissal based upon defendant's motion to dismiss for purportedly "plaintiffs' failure to state a claim" was repugnant against Section 1983. The judgment constituted judicial err and error of law, and fraud during pending proceeding based upon illegal ex parte communications between the Court and "all attorneys" [Julian Bush / Erin McGowan] use of emails constituting wire fraud 18 U.S.C. S 1343.

137.   October 14, 2003 – January 1, 2015, defendant, Charlie A. Dooley, sworn into office becoming St. Louis County's 7th county executive. Defendant, Dooley accessory S 541.110 tenure as County Executive predated and extended into the principal United States' acknowledging the Title III program under FOIA in 2009 – 2010. Defendant failed to perform his "fiduciary duty" "oath or affirmation to support the Constitution of the United States and of this state," and duties under law [St. Louis County Charter, Article II, Section 3.040-"The county executive shall be responsible for the proper…administration of such affairs of the county…by law…"]. Defendant knew or should have known the county's **decision** exercising

29

the State's "police power" aiding principal United States' Title III program violated the Fourth Amendment and this State's constitution Article I, Section 15 "affecting plaintiffs' civil rights." Defendant, Dooley as county executive more-likely-than-not continued to supervise the county's part in the Title III program from his predecessor non-defendant former County Executive George Westfall, deceased.

138.  January 1, 2015 – April 29, 2019, non-defendant, Steve Stenger sworn into office becoming St. Louis County's 8th county executive. Non-defendant, Stenger upon indictment resigned the office as county executive and was unable to perform his "fiduciary duty," Article II, Section 3.040. Id. Defendant's indictment and resignation, prior too, completing his Second Term as county executive not deemed accessary S 541.110 in principal United States' Title III program.

139.  April 29, 2019 – present, non-defendant, Sam Page, sworn into office becoming St. Louis County's 9th county executive. Non-defendant, Page as county executive not deemed accessory S 541.110 in principal United States' Title III program non-defendant's "fiduciary duty" [St. Louis County Charter, Article II, Section 3.040-"The county executive shall be responsible for the proper... administration of such affairs of the county...by law..."] as current officer holder his "fiduciary duty' under law is ongoing.

140.  July of 2019, defendant, Beth Orwick, sworn into office becoming county counselor for St. Louis County. Defendant, Orwick "fiduciary duty" RSMo, S 56.640 "...the county counselor...shall represent the county...county counselor shall commence, prosecute or defend, as the case may require." Defendant, Orwick under service of plaintiffs' complaint and summons "failed to plead or otherwise defend" St. Louis County's legal interest in Federal district court proceeding No. 4:19-cv-02328AGF/RLW/SRC filed August 9, 2019 defendant, Orwick defaulting rule 55; and-

(a).  Defendant, Orwick accessory RSMo, S 541.110 was required to file responsive pleading "specifically denying" the allegation in the complaint of the Title III program continuing within the jurisdiction of St. Louis County rule 8(c) or the allegation **admitted**. Missouri's conspiracy statute RSMo, S 562.014.6(1) defendant, Orwick in a county's responsive pleading must assert the Title III

30

program was "**abandoned** by the defendant and by those with whom... conspired" defendants, United States, State of Missouri and City of St. Louis; and-

(b).  Defendant, Orwick county counselor more-likely-than-not committed wire fraud 18 U.S.C. S 1343 by ex parte communicating with the district court in the use of emails acknowledged by defendant, Linhares, Clerk of Court CM/ECF notification stating the following "Email all attorneys, additional recipients will not send to terminated parties"; and-

(c).  Defendant, Orwick served as Asst. United States Attorney, Eastern Division, with defendant, Jeffrey B. Jensen, United States Attorney, prior too, her position as Asst. United States Attorney, and her appointment to become county counselor. Defendant, Orwick served as chief trial assistant during the tenure of defendant, Jennifer Joyce who served as circuit attorney, when the Title III program was continuing within the jurisdiction of the City of St. Louis.

XIII.  <u>Scheduling Order "Must" Be Entered By Judge When, Frivolous Claim or Frivolous Defense Dismissal When, "After the Fact" Entry of Dismissal By Third Judge</u>

*Rule 16(c)-"...matters for consideration at a pretrial conference, sec. 2- "...eliminate frivolous claims or defenses..."

*Rule 16(1) Scheduling Order-"...district judge...when authorized by local rule **must** issue a scheduling order." Sec. (2) Time to Issue-"The judge ("defendant White") **must** issue the scheduling order as soon as practicable, but unless the judge ("defendant White") finds good cause for delay, the judge ("defendant White") **must** issue it within the earlier 90 days after any defendant has been served with the complaint or 60 days after any defendant has appeared."

141.  August 10, 2019, defendants, United States by and through U.S. Attorney Jeffrey Jensen, and City of St. Louis by and through city counselor Julian Bush served the complaint and summons via Process Server.

142.  First judge, defendant, Judge Fleissig recused from the instant case "conflict of interest" cited as defendant in the complaint. Second judge, defendant White presided within the time set for scheduling order to be entered

rule 16(1), sec. 2; scheduling order **must** be entered within 90-days after **any** defendant is served the complaint, and the scheduling order should have been entered by Judge White on or before November 9, 2019.

143.   December 10, 2019, Defendant, Judge White sua sponte "disqualifying" from the instant case to "avoid the appearance of impropriety," Judge White failed to perform his "fiduciary duty" under rule 16(1) and sec. (2), prior too, disqualifying Judge White failed to enter the scheduling order on or before November 9, 2019. Judge White or alternate should have entered a "show cause" order for good cause delaying the entry of the scheduling order.

144.   Defendant, Judge White intentionally "disqualified" from the instant case, too avoid, rule 16(c) determination on the question of dismissal of plaintiffs' claim as frivolous, or dismissal of defendants' defenses as frivolous. Also, avoiding entry of default by judge rule 55(a)(b)(2) during pretrial conference against several defendants "failure plead or otherwise defend" whose motions were "time barred" rule 12; and-

(a).   Defendant, Judge White knew defendant, Linhares, Clerk of Court failed to enter default rule 55(a)(b)(1) against those defendants who failed to file "timely" responses after service of the complaint and summons, or complaint and waiver of service of summons, or service of the complaint and alias summons issued by the clerk's office.

145.   Defendant, Judge White knew defendant, United States' Title III admission under FOIA, plaintiffs' **claim** alleging Fourth Amendment violation by federal, state and county Law-Enforcement colorable Bivens' case, and Section 1983 Civil Right Act of 1871 were not frivolous. Defendants' defenses in motions to dismiss citing plaintiffs "failed to state a claim upon which relief can be granted" was subject to frivolous dismissal at pretrial conference.

146.   Defendants, Judge White and Linhares, Clerk of Court schemed to deny plaintiffs privileges and immunities Section 1983 of the Civil Rights Act of 1871, too, pretrial conference, and entry of default by Clerk of Court and proposed order entry default judgment by judge constituted honest service fraud, procedural due process and due process deprivation Fifth Amendment.

147.  December 19, 2019, third judge, defendant, Judge Clark assigned the instant case, and on the same day "after the fact" entered the memorandum and order dismissing plaintiffs' claim as frivolous 28 U.S.C. S 1915, and affirming several defendants' defenses "plaintiff failed to state a claim upon which relief can be granted." Injury "in fact' to plaintiffs' substantive right to due process Fifth Amendment, and under rules promulgated Fed. R. Civ. Proc. had already occurred, prior too, assigning of third judge defendant, Clark.

XIV.  Judicial Department Used 28 U.S.C. S 1915 First "Weapon of Mass Destruction" Denying Civil Rights To Poor Persons and Pro Se Litigants

*Federal district judges grant in forma pauperis under 28 U.S.C. S 1915, but service of process not executed by the clerk's office. In pro se litigations the judge at any time, prior too, service of process before pretrial conference can dismiss if the Court determines the plaintiffs' complaint [claim] is frivolous, and not whether defendants' failure to plead or otherwise defend under rule 8(c) **admitted** to the allegations raised. When, pro se litigant pays the court's fee $400.00 the Clerk's Office execute summons under Seal of the district court. In the instant case, according to the Court's order "several defendants file dispositive responses," and the remaining defendants failed to plead or otherwise defend" defaulting rule 55. The court can exercise "judicial discretion" to ignore defendant's non-justiciable defense "failure to state a claim" repugnant to Section 1983 of the Civil Rights Act of 1871. Those defendants defaulting rule 55 their civil admissions are also voided by the judge dismissing plaintiffs' claim as frivolous 28 U.S.C. S 1915.

*Supreme Court the last court of resort for vindicating civil rights avoids addressing the plaintiffs' challenges to 28 U.S.C. S 1915. 28 U.S.C. S 1915 granting unchecked judicial discretion to dismiss pro se litigation, prior too, service of process by the clerk's office in forma pauperis, after service of process of the complaint by plaintiffs, complaint and alias summons by clerk's office, and before pretrial conference rule 16 violates the judicial discretion standards. 28 U.S.C. S 1915 targets 'pro se' litigant's claim for frivolous dismissal determinations, prior too, pretrial conference rule 16(c)(2), after defendants default, or file motions to dismiss "time barred" under rule 12. 28 U.S.C. 1915 should have been "struck

33

down" at plaintiffs' appeal 28 S 1915 being unconstitutional arbitrary, capricious and vague.

XV.   Judicial Department(s) State and Federal Used Rules Second "Weapon of Mass Destruction" Denying Civil Rights to Poor Persons and Pro Se Litigants

*Weaponized **Laws**, **Policy**, **Ordinance**, **Statutes** or **Decisions** "affecting plaintiffs' civil rights" colorable claim Section 1983 of the Civil Rights Act of 1871.

148.  Defendant, United States under FOIA acknowledged the CIA and NSA conducting a Title III electronic and interception program inside the United States against U.S. persons, violation of **law** [National Security Act of 1947]; and-

(a).  Defendant, State of Missouri knew the electronic interception accessing computers and retrieving personal data violated a **statue** RSMo, S 569.095 Tampering with computer data, and Missouri Constitution, Article I, Section 15 protecting computer from illegal "searches," and data "seizures." Defendant, State of Missouri's **decision** too willfully assist principal's Title III program knowing the conduct was in violation of state **law**; and-

(b).  Defendant, City of St. Louis' **decision** in exercising the State's "police powers" to assist the principal's Title III program with its jurisdiction not according to any **ordinance** authorizing the conduct searches of computers and seizure of computer data within the city's jurisdiction violating state **law** RSMo, S 569.095; and-

(c).  Defendant, St. Louis County's decision in exercising the State's "police powers" to assist the principals Title III program within its jurisdiction not according to **ordinance** authorizing the conduct searches of computers and seizure of computer data within the county's jurisdiction violating state **law** RSMo, S 569.095.

149.  Defendants, United States, State of Missouri, City of St. Louis and St. Louis County by and through it agent [U.S. attorney, city counselor, county counselor, State attorney general] must in responsive pleading cite affirmative defense(s) Fed. R. Civ. P. 12(b)(6) and Mo. R. Civ. P. 55.27(a)(6)-"failure to state a claim upon which relief can be granted" Section 1983, based on defendants' **decision(s)**

34

"affecting plaintiff's civil rights." Montell, Id, at 690-91, 98 S. Ct. at 2036.

150. Defendant, United States by and through its agent [U.S. attorney] in a collection of district court cases [Lines # 23-30, 32-33] failed to file responsive pleadings voluntarily foregoing the right and privilege to file affirmative defenses rule 12(b)(6). The judges giving "legal assistance" to defendants cited the affirmative defense in their orders dismissing under 28 U.S.C. S 1915; and-

(a). October 23, 2019, defendant, United States for the first time in the district court in re No. 4:19-cv-02328 collection of cases [Line # 31], defendant's attorney filed its motion to dismiss citing "plaintiffs failed to state a claim upon which relief can be granted," but the motion was "time barred" rule 12. Affirming, the judges "weaponized" rule 12(b)(6) in a scheme to deny redress under Section 1983, and federal judges lacked judicial discretion to assert in orders, defendant's affirmative defenses displayed "impropriety" CANON 2, and CANON 3-"Judge should perform the duties of the office fairly, impartially..."

151. January 31, 2014, defendant, state Circuit Judge Collen Dolan in re No. 14SL-MC-01531 collection of cases [Line # 43] in the order cited "plaintiffs pleadings do not state a legally submissible cause of action against any defendant," but State circuit courts can address Section 1983 claims; Claflin, 92 U.S. at 130. Judge Dolan "weaponized" rule 55.27(a)(6) by asserting the defendant's affirmative defense as ground to dismiss plaintiffs' civil claim under Section 1983, rule 55.27(a)(6) the defendant(s) **must** states the affirmative defense "plaintiffs' pleadings do not state a legally submissible cause of action" in "responsive pleading(s)."

XVI.  Judicial Department [District Court] Third "Weapon of Mass Destruction" Violating Supreme Law Denying Civil Rights to Poor Persons and Pro Se Litigants

152. 2009 – 2010, defendant, United States acknowledged under FOIA the violation of the National Security Act of 1947 prohibited the CIA from performing law-enforcement powers...internal-security function inside the United States against U.S. person not involving terrorism or terrorist activity, or against person(s) not acting as agents for a foreign State which sponsors terrorism or terrorist activity.

35

153.  Plaintiffs' colorable claim under Section 1983 for Fourth Amendment deprivation by federal, state, local and county Law-Enforcement agencies [Unknown, DOES or John, DOES] Bivens' action; 403 U.S. 388 (1971).

154.  Plaintiffs' substantive right to jury trial once demanded was preserved under the Seventh Amendment, but the district court "weaponized" 28 S. 1915 to dismiss plaintiffs' Lawsuit as frivolous denial of plaintiffs' substantive right under the U.S. Constitution "supreme law," and Missouri's constitution.

XVII.  <u>Substantive Right to Jury Trial</u>

**\*Conspiracy committed within the jurisdiction of the State of Missouri:** "Jury determines the law and the facts." Tenth Amendment, States can enact additional "safeguards" above those granted by the U.S. Constitution,[9], and federal laws in the protection of civil rights granted to citizens within the several State's respective jurisdictions.

---

9

Seventh Amendment of the U.S. Constitution limits the right to a jury trial to a controversy exceeding twenty-dollars. December 15, 1791 necessary three-quarters of the States had ratified it.

---

155.  Jury trial demand in Missouri once asserted in a pleading is not subject to judicial discretion, or scheme, or fraud under federal or state law, court rulings or artifact orders dismissing such right once asserted, right to jury trial demand is a substantive right under Missouri's constitution is "inviolate"; and-

(a).  Bill of Rights, Article I, sec. 22(a)-"That the right of trial by jury as heretofore enjoyed shall remain inviolate."

156.  Plaintiffs' civil claim [Fourth Amendment] Section 1983 of the Civil Rights Act of 1871, the right to jury trial is a substantive right under due process Fourteenth Amendment enforced upon the several States by way of Due Process Clause Fifth Amendment. See, e.g. State must grant jury trial in re Section 1983 "…state court cases that are decided under federal law." Dice v. Akron, C. & Y.R.R.

342 U.S. 356 (1952).

XVIII.  Defendant's Search and Seizure of Plaintiffs' Legal "Data," "Work Product," Prior Too, Service of Process [Certificate of Service] Privacy Deprivation In Furtherance of Defendant [United States and District Court] Email Scheme

157.  Defendant, United States' Title III electronic interception "search" of plaintiffs' personal computer, or computer networks [businesses / libraries] to "seize" data [plaintiffs' work-product] in violation of State law RSMo, S 569.095. The "seizure" of plaintiffs' work product was privileged afforded "free speech" protection First Amendment and Mo.Const., Bill of Rights, Article I, sec. 8.[10].

---

10

Section 8-"That no law shall be passed impairing the freedom of speech, no matter by what means communicated: that every person shall be free to say, write or publish, or otherwise communicated..."

---

158.  Defendant, United States' seizure of plaintiffs' data, prior too, issuing service to defendants, and filing with the district court. The "work product" doctrine...The doctrine protects from discovery the trial preparations from of parties...and other prepared in anticipation of litigation..." Hickman v. Taylor, 329 U.S. 495 (1947); see, e.g. Missouri cases followed Hickman. See infra note 17.[11]. Plaintiffs representative's "opinions" work product on relevant law expressed in the data "seized" was exempt from discovery under principal United States' Title III program.[11],[12].

---

11

"Work product" doctrine "it is based upon the principals that parties...should be free to prepare for trial without fear that their opponents will discover their preparations..."; Hickman v. Taylor, 329 U.S. 495, 501-11 (1947)."Opinion" work product, which includes the mental impressions and legal theories of an attorney or other representative of a party ("often referred to as "the thoughts and opinions of counsel"), is **absolutely immune from discovery.** See infra 173-81

and 197-209 and accompanying text.

12

Missouri courts gave work product greater protection than envisioned in Hickman: See, e.g. State ex rel. Terminal R.R. Ass'n v. Flynn, 363 Mo. 1065, 1072, 257 S.W.2d 69, 73 (Mo. 1950). The doctrine was applied to material prepared non-lawyers. See Flynn, 363 Mo. 1065, 1072, 257 S.W.2d 69, 73 (1953)(en banc) (work product can be prepared by party's attorney or agent), and all work product was held absolutely immune from discovery." See Flynn, 363 Mo. 1065, 1075, 257 S.W.2d 69, 75 (1953).

---

159. Defendant, United States' seizure of plaintiffs' data "work product" was in furtherance of defendant's scheme to provide plaintiffs' representative opinions [thoughts] to additional defendants [U.S. attorney, State of Missouri, City of St. Louis, St. Louis County, corporations, businesses]. Orchestrated by and through the district court under the email scheme notifications made to "all attorneys, additional recipients, and terminated parties" by the clerk's office in order to prepare defendants' affirmative defenses.

160. Based upon the "seizure" of plaintiffs' agent "opinions" in representative agent's work product produced via computer documents seized, prior too, filing with the district court, and before service of process upon defendants ("Certificate of Service") rule 5(d)(1).

161. The Supreme Court in Wright v. Roanoke Redevelopment and Housing Authority, 479 U.S. 418, 420 n.3 (1987)-"suggested that a regulation promulgated to interpret federal statute could also be a "law" which could be enforced under Section 1983"; and-

(a). Any warrant under affidavit and materials seized relevant to the Title III surveillance interception and metadata collection, accessing computers seizing data, "sealed" by the court can be "unsealed." USAM 9-7.250 "The application may be unsealed only pursuant to a court order and only upon a showing of good cause under 18 U.S.C. S 2518(8)(b) or in the interest of justice 18 U.S.C. S 2518(8)(d). Defendant, United States did not "act with consent" of the plaintiffs

38

and the defendant was not acting "to protect the privacy rights of those individuals implicated in the Title III investigation."

XIX.  District Judge Sua Sponte "Ruled In The Alternative" Legally Voiding Defendants' Defense(s) "Plaintiffs Failed To State A Claim"

162.  December 19, 2019, defendant, Judge Clark memorandum and order acknowledged defendant, Linhares, Clerk of Court, docketed plaintiffs' submission under the wrong caption: "Although Document 4 was docketed by the Clerk of Court as an Amended Complaint, the Court will liberally construe it as a supplemental to the original complaint." Memorandum / Order, pg. 4.

163.  Defendant, Judge Clark ruled in the alternative that A is true the clerk filed an amended complaint, but if A is not true, then B is true Document 4 as construed was a supplemental pleading.

164.  Defendants, United States, City of St. Louis, and FedEx referenced in their motions to dismiss amended complaint or first amended complaint filed on the docket by defendant, Linhares, Clerk of Court Document 4. Subsequently, defendant, Judge Clark 'sua sponte' construed Document 4 as a supplemental pleading to plaintiffs' original complaint not amending plaintiffs' original complaint. Defendants, United States, City of St. Louis and FedEx seeking dismissal based upon purportedly plaintiffs' having amended the complaint and failing to state a claim therein is "nullity" legally void, because the complaint wasn't "amended" it was 'sua sponte' ruled a "supplemental pleading" irrespective of any **defects** in stating a claim in the original pleading.[13].

---

13

Fed. R. Civ. Proc. 15(d) Supplemental Pleading: "On motion and reasonable notice, the court may. On just terms, permit a party to serve a supplemental setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The Court may permit supplementation even though the original pleading is **defective** in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time."

165.  Judge Clark 'sua sponte' ruled Document 4 was a supplemental pleading to the original complaint. Defendant, Judge Clark then affirmed dismissal based upon defendants' legally voided defense "plaintiff failed to state a claim upon which relief can be granted" based upon Document 4 an amended complaint. Defendant, Judge Clark did not order the "**opposing party**" plead to the supplemental pleading, prior too, entering the memorandum and order; and-

(a).  Therefore, defendant, Judge Clark "ruling in the alternative" B supplemental is true, opposing parties [defendants] never plead "specifically denying" the allegations noted in Document 4 construed supplemental pleading then the allegations **admitted** rule 8(c); and-

(b).  "The Supreme Court has indicated that rule 8(c) pleading requirement is intended to give the opposing party both notice of the affirmative defense and opportunity to rebut it." Id. First Union Nat. Bank v. Pictel Overseas Trust Corp., 477 F.3d 616, 622 (8th Cir. 2007)(citing Fed. R. Civ. P. 8(c); and-

(c).  Rule 8(b)(3)-"A party that intends in good faith to deny all the allegations of a pleading...or generally deny all except those specifically admitted. Sec. (4)-"A party that intends in good faith to deny only part of an allegation must admit the part that is true and deny the rest." Sec. (6)-"An allegation...is admitted if a responsive pleading is required and the allegation is not denied..."; and-

(d).  Defendants, United States, City of St. Louis and FedEx voluntarily determining "not to speak" to rebut or dispute the allegations in Document 4 supplemental pleading "the Court must presume all factual allegations to be true"; Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).

166.  Plaintiff never submitted to the Clerk's Office for filing a document captioned amended complaint nor executed under service of process upon defendants plaintiffs' document captioned [See Original Complaint Filed] Certificate of Service mandated rule 5(d)(1).

167.  Absent service of process upon the defendants of plaintiffs' document captioned [See Original Complaint Filed], based upon principal United States' seizure of the data produced by computer document [See Original Complaint Filed]. The district court by and through defendant, Linhares, Clerk of Court, used

wireless communication "emails" to communicate ex parte with "all attorney" to convey Document 4 purported amended complaint constituting wire fraud 18 S 1343.

168.   Notwithstanding defendant, Judge Clark ruling in the alternative Document 4 a supplemental pleading to plaintiffs' original complaint "after the fact." Defendant, Linhares, Clerk of Court, prior too, entry of the court's memorandum and order Document 4 was transferred via email captioned as an amended complaint, and defendants reference such amended complaint or first amended complaint in their motions to dismiss e-filings.

XX.   <u>Courts of Appeals [Eastern Division / DC Circuit] Honest Service Fraud Affirming "lower Trial Courts'" Decision(s) Dismissing 28 U.S.C. S 1915</u>

*1866 Civil Rights Act, 14 Stat. 27-30, Section 3-"That the district courts of the United States within their respective districts [Eastern Division, Dist. of Columbia], shall have, exclusively of the courts of the several States, cognizable of all crimes and offenses committed against the provisions of this Act...concurrently with the circuit court of the United States, of all causes, **civil** and **criminal**...The jurisdiction in civil and criminal matters hereby conferred on the district and circuit courts of the United States shall be **exercised** and **enforced** in **conformity** with the laws of the United States..."

169.   Non-defendants, INDIVIDUAL 18, en banc court of appeals judges [dropped parties],[14]. Non-defendants, INDIVIDUAL 18 for the Eastern Division and District of Columbia knew or should have known Section 1983 Civil Rights Act of 1871 cognizable "**civil**" matter, and Fourth Amendment Bivens' action deprivation under National Security Act of 1947 cognizable "**criminal**" matter before the district court.

---

14

Court of Appeals Chief Judge William J. Riley, Eastern District, retained as defendant in related matter Social Security Appeal and false impersonation 18 U.S.C. S 912 by employee of SSA under the Chief Judge's tenure in 2010.

---

170.  Non-defendants, INDIVIDUAL 18, appeal court judges knew or should have known at plaintiffs' appeal(s) the circuit court(s) in **conformity** with the law of the United States 1866 Civil Rights Act. Non-defendants, INDIVIDUAL 18, could have "**exercised**" and "**enforced**" the vindication of plaintiffs' civil rights, but in a "continuing violation" of plaintiffs' civil rights, non-defendants, INDIVIDUAL 18, affirmed the lower courts' dismissing under color of federal law [28 U.S.C. S 1915] plaintiffs' civil rights case joining Title III admission.[**15**]; and-

(a).  "the court...has no discretion to refuse to hear a case of deprivation of rights and criminal injury," Judiciary Act of 1789, sec. 342. "...the court to exercise their core Article III jurisdiction to decide cases and controversies." Clinton v. Jones, 520 U.S. 681 (1997).

171.  Non-defendant, INDIVIDUAL 18, DC court of appeals denied plaintiffs "extraordinary relief" injunctive or prohibition order 1986 Act 18 U.S.C. S 2521 against defendant, United States principal 18 U.S.C. S 2 having authorized the Title III program within the jurisdiction of the District pf Columbia.

172.  Non-defendant, INDIVIDUAL 18, Eastern Division court of appeals denied Plaintiffs "extraordinary relief" injunctive or prohibition order 1986 Act 18 U.S.C. S 2521 against defendant, State of Missouri accessory 18 U.S.C. S 3 assisting principal's Title III program within the jurisdiction of the State of Missouri.

173.  U.S. Supreme Court in McNally v. United States, 483 U.S. 350 (1987) holding "honest service fraud" under 18 U.S.C. S 1346 criminalized depriving a person of "money," or "property. Congress in 1988 enacted a new law that specifically criminalized schemes to defraud victims of "the tangible right to honest service" repealed McNally in re 18 S 1346 which states "For the purpose of this chapter, the term scheme or artifice to defraud includes a scheme or artifice to deprive another of the "intangible right to honest service."

---

15

Wiscart v. D'Auchy, 3 Dall. [3 U.S.]; U.S. v. Goodwin, 7 Cranch [11 U.S.] 108. Under this statue of 1789, "it is very clear that the appellate jurisdiction of the circuit court in all civil actions at common law could be exercised."

XXI.  Chief Justice "Lone Qualified Justice" To Sit As Appellate Judge Precedent
United States v. Wonson Justice Story Sits Circuit Judge at Appeal

174.  In a collection of appeals [Lines # 34-37] Supreme Court last court of resort for vindication of civil rights; 1866 Civil Rights Act, Section 10-"That upon all questions of law [**civil** and **criminal**] arising in any cause under the provisions of this Act a final appeal may be taken to the Supreme Court of the United States."

175.  [Line # 97] United States Supreme Court by and through former clerk William K. Suter initially filed and set for hearing this ongoing matter under the tenure of former Chief Justice, William H. Rehnquist, deceased.

176.  March 17, 2008, under the current tenure of defendant, John G. Roberts, Jr., Chief Justice. Non-defendant, former clerk William K. Suter in a letter acknowledged the existence of cause [Line # 97] in the letter's caption and referenced one plaintiff [Joseph Johnson], but withheld the case number assigned the original filing Estate of Vandelia W. Johnson, et al v. United States, et al; and-

(a).  The plaintiffs sought specific "extraordinary relief" addressing the Supreme Court delaying the entry of decision in the matter [Line # 97] initially filed and set for hearing.[**16**].

---

16
"The above-entitled extraordinary writ seeking unspecified relief was received on March 17, 2008, and is herewith returned. As you are not a member of the Bar of this Court you may not submit a petition in a representative capacity on behalf of an individual."

---

177.  The clerk's office letter acknowledge an estate in re Estate of P.D. Johnson 3-87-0974-PD from the probate division, Twenty Second Judicial Circuit, City of St. Louis, State of Missouri addressing the subject matter [Line # 97].

178.  Supreme Court having filed and set for hearing the matter [Line # 97] during the tenure of Chief Justice Rehnquist, subsequent restraint of plaintiffs members of a suspect class [African American's] right based upon class status

43

[court's Bar membership]. Violated estate members' right under the "First and Fifth Amendments to engage in a group activity to enable its members to meet the cost of legal representation and otherwise to secure meaningful access to the courts." Trainmen, supra, United Mine Workers v. Illinois State Bar Assn., 389 U.S. 217; NAACP v. Button, 317 U.S. Pp. 401 U.S. 579-586.

179.  September 29, 2005 – present, the Supreme Court "court of last resort" 1866 Civil Rights Act, sec. 10 under the tenure of defendant, John G. Roberts, Jr., Chief Justice "continuing violation doctrine" has denied plaintiffs' right to petition the High Court for redress of grievances for vindication of civil rights involving a State [Missouri]; and-

(a).  In litigation involving civil rights violation by a state requires an "exclusive federal remedy"; Jett, 2702 S. Ct. at 149; see, e.g. Judiciary Act of 1789, sec. 13, in pertinent part: "That the Supreme Court shall have exclusive jurisdiction of all controversies of a civil nature, where a state is a party." Justice Joseph Story sat as the "lone qualified Justice" [circuit court judge] United States v. Wonson (1812). The Justice holding "It is undoubtedly true, that in courts proceeding according to the course of the civil law, an appeal from an inferior to a superior tribunal removes the whole proceeding, and usually, though not invariably, opens the facts, as well as the law to re-examination." Wiscart v. D'Auchey, 3 Dall. [3 U.S.] 321.

180.  2005 – present, defendant, Chief Justice Roberts presiding as circuit court judge, non-defendants, INDIVIDUAL 18, or Supreme Court en banc superior tribunals did not consider "opening the facts," from the inferior district court defendants' State of Missouri, City of St. Louis and St. Louis County **decisions** to implement, or assist the Title III program Fourth Amendment deprivation. The ensuing conspiracy to cover-up and conceal the conduct "affected plaintiffs' civil rights" citing precedent in Montell, Id, at 690-91, 98 S. Ct. at 2036; and-

(a).  [Fourth Amendment claim] is actionable in a Bivens action; see Hartman v. Moore, 547 U.S. 250, 254, n.2, that the conduct by the Government was motivated by race animus discrimination. Defendants, United States, State of Missouri, City of St. Louis and St. Louis County having acted "with malice or reckless indifference to federally protected rights", wherein, the "conduct was

outrageous", Nelson v. Boatman's Bancshares, Inc., 26 F.3d 796, 804 (8th Cir. 1994); and-

(b).  Subjecting the "law to re-examination" whether Section 1983 of the Civil Rights Act of 1871 allowed plaintiffs' colorable Fourth Amendment "implied cause of action," and Bivens' claim. First Canon of statutory construction-that courts must presume that a legislature says in a statute what it means and means what it says: Conn. Natl. bank v. Germain, 503 U.S. 249 (1992); and-

(c).   In collection of cases [Lines # 23-37] "[a] court is to apply the law in effect at the time it renders its decision, unless doing so would result in a manifest injustice"; Bradley v. Richmond Sch. Bd., 416 U.S. 696, 711-12 (1974).

181.  Title III program 1986 Act 18 U.S.C. S 2521 "actual controversy involving the United States as a defendant"; Muskrat v. United States, 219 U.S. 346 (1911). Under American jurisprudence judge is the one "deemed to know the law...the court...has no discretion to refuse to hear a case of deprivation of rights and criminal injury"; Judiciary Act, of 1789, sec. 342; and-

(a).  2005 – present, defendant, The Chief Justice Roberts under the reporting requirement had knowledge of the Title III surveillance FISA 50 U.S.C. S 1085(b), sec. (a)(5)(c); "our law is deemed certain...and not dependent on the caprice or will of judges." AFaye v. United States, 223 F.3d at 898 (2000).

XXII.  Congresses' "Elastic Powers" To Enact National Security Act of 1947 Prohibiting Conduct, Conduct Oversight and Direct Civil Remedy

182.  January 4, 2007 – January 3, 2011 and January 3, 2019 – present, defendant, Nancy Pelosi under her first tenure as Speaker and based upon Congresses' oversight over the Executive Department, Judicial Department and Intelligence Community agencies. Defendant, Pelosi knew or should have known the Executive Department [DOJ] had acknowledged a Title III spying program against U.S. person(s) in 2-FOIA disclosures in 2009 – 2010; and-

(a).  Under defendant's second tenure as Speaker and based upon Congresses' oversight over the Judicial Department knew district court judges were engaging in wire fraud 18 U.S.C. S 1343 using wireless emails in conducting the public's

business in pending proceeding; and the use of emails contravened the Fed. R. Civ. P. rule 5 adopted by the Judiciary Committee U.S. House of Representatives, under rule 5 judges and private litigants "all attorneys" should communicate via e-filings and orders. The district court used emails to communicate ex parte with private litigants contravened "records maintained by agency" provision Public Records Act, Pub. L. 81-754, 64 Stat. 578 aka 64 Stat. 583.

183.  January 3, 2007 – January 3, 2015, non-defendant, INDIVIDUAL 19 sworn into office becoming majority leader United States Senate. Non-defendant, INDIVIDUAL 19 as majority leader based upon Congresses' oversight over the Executive Department, Judicial Department and Intelligence Community agencies. Non-defendant, INDIVIDUAL 19 knew or should have known the Executive Department [DOJ] had acknowledged a Title III spying program against U.S. person(s) in 2-FOIA disclosures in 2009 – 2010.

184.  January 3, 2015, defendant, Addison M. McConnell, Jr., sworn into office becoming majority leader of the United States Senate. Defendant, McConnell retained knowledge of the Title III spying program from his predecessor former majority leader non-defendant, INDIVIDUAL 19; and-

(a).  Defendants, Speaker Pelosi and Majority Leader McConnell and non-defendant, INDIVIDUAL 19 knew Judicial Department employees under color of federal law 28 U.S.C. 1915 were dismissing plaintiffs' Lawsuit colorable under Section 1983. District court's participation in a conspiracy to "conceal," and not "disclose" the Title III spying program by the Executive Department and more-likely-than-not the district court granted the Fourth Amendment warrant authorizing the criminal conduct. Bratton, 73 F.2d 795.

185.  January 3, 2001-present, defendant, William L. Clay, Jr., has served as Congressman for the 1st Congressional District of Missouri, and plaintiffs' representative in Congress. Defendant, Clay had firsthand knowledge of the Title III program based upon 2-FOIA disclosures and documents outlining the CIA and NSA intelligence gathering within the 1st Congressional District hand delivered to the Congressman's political office U.S. District Courthouse 111 S 10th St. # 24.344, St. Louis, MO 63102.

186.  Defendant, Clay serving on the Government Oversight and Reform Committee failed to prevent the further deprivation of plaintiffs' civil rights 42 U.S.C. S 1985 and S 1986. Defendant, Clay more-likely-than-not retained knowledge of the Title III program from his predecessor defendant's father former representative defendant, William L. Clay, Sr. [dropped party] who served as representative of the 1st Congressional district from 1969-2001; and-

(a). Silence is not an crime actual crime but it "contributes to the commission of offenses are…in the same manner as direct violation"; United States v. Maselli, C.A.6 (Ohio) 1976, 534 F.2d 1197.

187.  Congress accessory-after-the-fact 18 S 3 based upon the reporting of intelligence activity EO 12333; Title III admission and government's default "Congress shall have power…to pay the debts" Art. 1, sec. 8; see, e.g. Civil Remedy by Congress 18 U.S.C. S 1595(a)(b)(1)(2)(c), and suit of compensation against the United States 28 U.S.C. S 1492.

188.  Defendants, Speaker Pelosi, Majority Leader McConnell and Representative Clay knew or should have known Congress repealed McNally decision 18 S 1346 addressing "intangible honest service fraud," defendants schemed to deny plaintiffs' redress "exclusive federal remedy" by Congress 18 S 1595(a)(b)(1)(2)(c) and 28 U.S.C. S 1942 ; and-

(a).  Defendants, Speaker Pelosi, Majority Leader McConnell and Representative Clay knew or should have known Section 1983 of the Civil Rights Act of 1871 is an Act of Congress and provides for the vindication of civil rights"; Rogers v. United States, 14 Cl. Ct. 39, 50 (1987).

XXIII.   "Continuing Violation Doctrine" Defendant's Judge-Shopping Article III Court Chief Justice Assigned Claims Court

*Congress in 1866 amended the United States Court of Federal Claims, Claims Court from an Article I, sec. 8, cl. 9 constituted tribunal to an Article III court "actual cases and controversies" jurisdiction 28 U.S.C. S 1491.

*Notwithstanding, local rule 55 United States cannot default preempting statutory pronouncement FTCA S 2674(a) defendant United States before the

47

Court of Claims can default "under like circumstances applicable to a private person, like circumstances are not limited to the same circumstances "but include analogous circumstances"; United States v. Olson, 546 U.S. 43, 47 (2005).

189.  March 15, 2017, United States Court of Federal Claims filed plaintiffs' complaint and motion for declaratory default claim. Defaults cognizable under the Judiciary Act of 1789, sec. 15: "That all the said Courts of the United States, shall have power in the trial of actions at law...it shall be lawful for the courts...to give judgment against him or her by default."

190.  Non-defendant, INDIVIDUAL 20, former chief judge Claims Court assigned non-defendant, senior judge INDIVIDUAL 21 cause No. 1:17-cv-00353 Johnson, et al v. United States, et al. Non-defendant, INDIVIDUAL 21 under local rule 12(4)(c) set the court's automatically generated-deadline shortening defendant, United States' response time to plead to plaintiffs' motion for default judgment. Defendant, United States' responsive pleading due on or before April 3, 2017.

191.  April 18, 2017, defendant, United States by and through its agent(s) filed its motion for leave to file out of time and for an enlargement of time [Doc No. 8] to respond to plaintiffs' complaint [DOC No. 1], and plaintiffs' first and second motions for declaratory judgment [DOC No. 3 & 6].

192.  April 18, 2017, defendant, United States' written admission default rule 55 failure to plead or otherwise defend under the automatically generated-deadline set by non-defendant, INDIVIDUAL 21; and-

(a).  "The Government did not file a response to Mr. Johnson's first motion on or before April 3, 2017." Defendant' Motion for Leave to File Out of Time and Motion for Enlargement, pg. 2, paragraph 1; and-

(b).  After, defendant, United states' defaults non-defendant, INDIVIDUAL 21, grants defendant second-bite at the apple the appearance of impropriety, failure to act impartially by judge.

193.  April 24, 2017, non-defendant, INDIVIDUAL 21 entered an order granting defendant, United States' motion more time, but directing defendant file response(s) to plaintiffs' complaint and 2-motion for default judgment.

48

194.  Between April 24, 2017 and May 1, 2017, defendant, Trump removed non-defendant, INDIVIDUAL 20 from the position as Chief Judge and assigned defendant, Susan G. Braden, Chief Judge without advice and consent of Congress [Senate Judiciary Committee].

195.  May 1, 2017, defendant, Braden entered an order sua sponte removing non-defendant, INDIVIDUAL 21, from cause No. 1:17-cv-00353 purportedly "for the efficient administration of justice" and assigning defendant, retired senior judge Bohdan A. Futey the matter.

196.  May 12, 2017, defendant, United States filed its motion to dismiss citing want of jurisdiction, defendant failed to comply with the order entered by non-defendant, INDIVIDUAL 21 that defendant respond to plaintiffs' complaint and 2-motions for declaratory judgment default.[17].

---

17
Recently, the Chief Justice of the Court of Queen's Bench in Alberta (Albertia's superior court) scolded a litigant for engaging in a practice known as "judge shopping." The man was told that he must follow court's orders imposed by previous judge and not try and seek a more favourable outcome.

---

197.  May 12, 2017, defendant, United States' attorney Agatha Koprowski filed its motion to dismiss before an improper venue [Claims Court], when any motion to dismiss by the U.S. Attorney was to be filed during the district court proceedings; see, e.g. agency regulation USAM 4-4.210.

198.  August 11, 2017, defendant Judge Futey entered an Opinion granting defendant, United States' motion to dismiss filed before an improper venue defendant, Futey citing want of jurisdiction under 28 U.S.C. S 1491 as grounds for dismissing plaintiffs civil action.

199.  The removal of judges and assigning of judges in the district court and Claims Court is a "playbook staple" of attorney general and U.S. prosecutors steering the case to a judge of their choosing" or judge-shopping; and-

(a). "...district utilizing a random selection process to jealously guard the integrity of the system from potential abuse which attempts to circumvent the process". Vaqueria Tres Monjitas, Inc. v. Rivera-Cubano, 341 F.Supp.2d 69 (D.P.R. 2004).

200.  In the instant case the defendant, Trump executive branch employee has the political authority to remove and assign judges comprising an Article III court [Claim Court] employees of the Judicial Department in violation of the Separation of Powers doctrine. Article III court [Claims Court and Federal circuit court of appeals] assigned the defendant, Chief Justice Roberts. Defendant, United States' judge-shopping in the instant case was repugnant to Congresses' powers Advise and Consent Clause, Article 2, section 2.

XXIV.   "Social Compact" Implied Contract, Federal Income Contribution Act FICA, Between SSA and Insured Worker, Inverse Condemnation by Agency

*Social Security Act of 1935 Pub. L. 74-271, 49 Stat. 620, or Social Compact between the government and American workers [employee tax = future benefits] held constitutional by Supreme Court; see, e.g. Steward Machine Company v. Davis, 301 U.S. 548 (1937), Helvering v. Davis, 301 U.S. 619 (1937).

*Principal [Commissioner of SSA] and Agent [SSA employee] relationship doctrine affecting the rights of plaintiff [Third Party recipient]; see, e.g. 18 U.S.C. S chapter 31-Embezzlement and Theft-"Whoever embezzles, steals or knowingly converts...money...of the United States...or any department or agency...converts it to his use or gain..." violates this section 18 U.S.C. S 641.

201.  June 1, 2018, plaintiff [Joseph Johnson] insured former worker, FICA, filed for Social Security Benefits with the Social Security Administration, SSA.

202.  June 13, 2018, Defendant, Nancy A. Berryhill by and through defendant Mike Kramer, Regional Commissioner, Region VII, under SSA's Notice of Award it stated plaintiff's entitlement to monthly benefits from Social Security beginning in May of 2018 retroactively.

203.  May 13, 2018, retroactively defendants, Berryhill and Kramer seized plaintiff [Joseph Johnson] Social Security Benefits $1,010.00 based upon a

50

purported overpayment of disability payment(s) made to the plaintiff from September of 2006 – February of 2008.

204.  October of 2006 – February of 2008, plaintiff, Joseph Johnson in disability benefits over a period of 17-months received approximately $19,352.80 with a 1-year retroactive payment of 13,000.00 totaling $32,352.80 Defendants, Berryhill and Kramer knew or should have known according to SSA's records the amount and duration of the disability payments made by SSA.

205.  June of 2018, defendants, Berryhill and Kramer in a subsequent notification of overpayment of disability benefits revised the purported amount of disability benefits payments to over $72,000.00.

206.  Defendants, Berryhill, or Kramer, or John Does employee(s) under her supervision embezzled approximately $39,647.20 from the Social Security trust fund in plaintiff [Joseph Johnson's] name and Social Security number and conspired to conceal and cover-up the theft of government funds by agency employees.

207.  Defendants, Berryhill and Kramer knew the notification made to the plaintiff of the overpayment of disability benefits in the amount exceeding $72,000.00 in 2018 was false, and in 2018 defendant, Berryhill was required to report the theft of United States funds to the Office of the Inspector General for the Social Security Administration.

208.  Defendants, Berryhill and Kramer knew on any purported "overpayment claim" by SSA the recovery could not exceed 15% or $151.50 of the portion of the benefit monthly payment $1,010.00 plaintiff was due a monthly payment $859.50; but-

(a).  June 13, 2018, defendants, Berryhill and Kramer in a Notice of Award notified the plaintiff the Social Security retirement monthly benefit would be $455.20, but was well-below the $859.50 based upon the 15% recovery allowed by law SSA, and the only exemption under the 15% recovery for taxes owed.

209.  December 23, 2019, defendants, Berryhill and Kramer in an SSA notification for tax purposes acknowledged for the calendar year 2019 SSA

51

"seized" plaintiff's Social Security Benefits $12,456.00 "taking" for public use "inverse condemnation" due process deprivation Fifth Amendment; and-

(a).  Defendants, Berryhill and Kramer conspired to conceal the embezzlement of money of the United States by her or her agent from the OIG by not reporting the theft, and by continuing to "take" plaintiff's Social Security benefit payment to cover-up the theft under the Commissioner's supervision according to the SSA's tax statement [Box 4. Benefits Repaid to SSA in 2019].

210.  Defendants, Berryhill and Kramer knew the purported overpayment of $72,000.00 in SSA's notification in 2018 was a false statement 18 U.S.C. S 1001, and SSA's notification of the fraudulent overpayment statement sent to the plaintiff [recipient] via U.S. Mail constituted mail fraud 18 U.S.C. S 1341.

211.  June 3, 2018, defendant, Alex M. Azar, Secretary, Dep't of Health and Human Services post seizure by defendants, Berryhill and Kramer of plaintiff's Social Security benefits. Defendant, Azar notified plaintiff his Medicare medical (Part B) billed at $134.00 monthly or medical coverage or medical coverage be forfeited August of 2018. Defendants, Azar, Berryhill and Kramer conspired to deny plaintiff medical coverage [Medicare] with the seizure of plaintiff's entire benefit $1,010.00 exceeding 15% under law; and billing plaintiff a monthly charge of $134.00 for medical Part B defendants knew plaintiff would not be able to pay. Defendants with knowledge, malice and intent sought the death of the plaintiff as a remedy for the Government.

212.  Defendants, Berryhill, Kramer and Azar by and through SSA's agent defendant, United States Attorney Jeffrey B. Jensen in its motion to dismiss failed to "specifically deny" the allegations in the complaint unconstitutional "taking." Seizure of benefits payment and medical coverage, and conspiracy seeking to cause the death of another in withholding medical Part B, and agency embezzlement of taxpayer funds FICA contribution **admitted** rule 8(c).

Subsection A:  Continuing Tort Doctrine" Agency, SSA and DOJ Fraud Upon The Court: False Impersonation By Agency Employee(s)

213.  January 5, 2011, defendant, Sean N. Stewart in Social Security Appeal Joseph Johnson v. Michael J. Astrue, Commissioner, SSA, No. 10-3741. Defendant,

Stewart filed in the circuit court a document captioned IMMEDIATELY Appearance: The Clerk will enter my appearance as counsel for the following party(s): Appellee /s/ Sean N. Stewart, Office of the General Counsel in re Social Security Administration; and-

(a).   Additional filing Appellee's Motion for Extension of Time.

214.   February 7, 2011, defendant, Stewart filed with the court of appeals nine copied of the Brief for Appellee in re No. 10-3741. Defendant, Stewart signed the Brief for Appellee sent to the plaintiff via U.S. Mail [mail fraud 18 U.S.C. s 1341]: Sean N. Stewart, Special Asst. United States Attorney. The document dated February 7, 2011 was caption under the Seal [Social Security Administration, Office of the General Counsel, Region VII].

215.   Defendant, Stewart under Seal of one government agency [SSA] signed Appellee's Brief impersonating being Special United States Attorney for a second government agency [Office of the United States Attorney] false impersonation 18 U.S.C. S 912.

216.   Defendants, Richard G. Callahan, United States Attorney, Eastern Division and Kristi A. Schmidt, Chief Counsel, SSA, Region VII, signed the Appellee's Brief listing defendant, Stewart Special Asst. United States Attorney.

217.   March 31, 2010 – March 11, 2017, defendant, William J. Riley served as Chief Judge, Court of Appeals, Eighth Circuit. Defendant, Riley and non-defendant, INDIVIDUAL 18, en banc knew about the violation of 18 U.S.C. S 912 by defendant, Stewart and defendant, Chief Judge Riley, U.S. Attorney Callahan and Chief Counsel Schmidt accessories-after-the-fact 18 U.S.C. S 2 aided and abetted the commission of a criminal act during pending court of appeals proceeding.

218.   May 10, 2010, defendant, Schmidt an accessory in the commission of a criminal act in a blatant "conflict of interest" in re plaintiff Joseph Johnson's Civil Rights Discrimination Complaint, Docket No. HQ-10-06-R. Defendant, Schmidt entered the decision denying any discrimination by the agency during 42 U.S.C. S 405 SSA's administrative proceedings, district court proceeding 4:10-cv-0497CAS/FRB and circuit court appeal proceeding No. 10-3741 en banc.

53

Subsection B: Fifth Amendment Equal Protection Deprivation District Court 42
U.S.C. S 405 Proceeding "No Conflicting Medical Evidence"

*Supreme Court holding in Richardson v. Perales, 402 U.S. 389 (1971); "...in a controversy involving conflicting medical evidence, the judge can order a reexamination to determine the physical limitations of the claimant."

219. September 18, 2006, non-defendant, INDIVIDUAL 22, SSA administrative law judge, ALJ entered a decision [FULLY FAVORABLE] on plaintiff [Joseph Johnson's] disability claims and insurance claim for a minor child [name omitted] No. ***-**-6304, ALJ citing in the Order, pg.4 of 6, sec. 5, cl. 5 "Because the record does not contain state agency medical opinions SSR 96-69 does not apply."

220. The "lone issue" on appeal before Appeals Council defendants, Julia D. Gibbs, Gabriel E. Depass, and ALJs J. Pappenfus and James E. Seiler was the question of an "underpayment" of disability benefits. The ALJs vacated the FULLY FAVORABLE decision and ordered the plaintiff [recipient] submit to physical re-examination in an administrative proceeding not involving "conflicting medical evidence" contravening precedent in Richardson. Id.

221. June 8, 2010, defendant, magistrate Frederick R. Buckles entered an order in re Joseph Johnson v. Michael J. Astrue No. 4:10-cv-0497 affirming the Appeals Council's decision vacating ALJ's decision FULLY FAVORABLE.

222. In or around June of 2010, defendant, district judge Shaw entered an order affirming the decision of defendant, magistrate judge Buckles. Defendant, Shaw ignored controlling precedent in Richardson in affirming defendant, Buckles' order affirming Appeals Council's decision voiding ALJ's Fully Favorable order.

223. Defendants, ALJ(s) Gibbs, Depass, Seiler, Pappenfus, magistrate judge Buckles and district judge Shaw denied plaintiffs [Joseph Johnson and minor child] Fifth Amendment right to due process and equal protection of law under 42 U.S.C. S 405. Defendants acting individually or collectively denied minor child's right to appointment of a guardian or attorney 42 S 416.1432(b), prior too, affecting her right voiding of insurance benefit, and intentionally in the instant case did not apply controlling court precedent Richardson, 402 U.S. 389; and-

(a). 2010, defendants, magistrate judge Buckles and district judge Shaw did not follow precedent in the Richardson Court, and Eastern Division ruling on adhering to precedent; "the judicial power of the United States is limited by the doctrine of precedence." Anastasoff, 223 F.3d 898 (8th Circuit 2000). Plaintiff, Joseph Johnson and minor child [daughter] defrauded of privileges and immunities under color of federal law 42 U.S.C. S 405, and criminal acts by employees of SSA and Office of the United States Attorney in pending proceeding; "fraud upon the court is fraud which is directed to the judicial machinery itself". Bullock, 763 F.2d 1115, 1121.

XXV.  "Tortious Act" Breach of Contract "Law of Agency Doctrine" Conduct Imputed to Principal Corporations or Businesses Licensed by the State of Missouri to Conduct Business Within the State; see, e.g. RSMo, S 351.025 and S 351.030.

*Principal and Agent Relationship: Agent [managers/ employees] acts on behalf of principal [President / CEO / Chairman] in respect to relationship with 3rd-Party non-employee, whereby the principal, expressly or implicitly, authorizes the agent to work under his or her control and on his or her behalf. Contractual obligation, external relationship between agent and Third Party on behalf of principal. An agent who acts within the scope of authority conferred by his or her principal binds the principal in the obligation he or she creates with the 3rd-Party. Actual authority of agent on behalf of principal acts outside of that authority (fails to perform service) they may be in breach of contract liability to 3rd-Party.

*United States v. Cincotta, 689 F.2d 238, 241-42 91st Cir. 1982). "Criminal liability may be imposed on the corporation only where the agent is acting within the scope of his employment...motivated by an intent to benefit the corporation."

224.  October 14, 2019, defendant Raj Subramanian, President and CEO, Federal Express Corp., FedEx by and through defendant, attorney Erin K. McGowan filed defendant's motion to dismiss plaintiffs' complaint citing plaintiffs" failed to state a claim upon which relief can be granted." Defendant, Subramanian made a "judicial admission" to breach of contract undisputed fact in the motion. One. A contractual relationship existed between plaintiff [3rd Party] and defendant [principal] in lieu of principal's agent. FedEx commercial carrier of mail [joint and several] terms of the agreement payment for future services

55

rendered delivery of plaintiffs' mail by defendant, FedEx. Two. Defendant, FedEx [principal] acknowledged by and through its agent [employee] receipt of plaintiffs' property [mail], and payment for service rendered [delivery] printed FedEx receipt [proof of ownership] of the property copied and mailed receipt issued in State of Missouri. Defendant, FedEx's agent [employee] at its facility in California failed to deliver plaintiffs' mail to addressee attorney Michael Avenatti, Newport Center Drive, Suite 1400, Newport Beach, CA 92660 breach of contract.[18]; and-

(a).  Judicial admission to breach of contract "is a party's unequivocal concession of the truth of a matter, which effectively removes the fact as an issue from the litigation." Geifo v. Lockheed Martin Corp., (2006) 140 Cal. App. 4th 34, 48); "...that a judicial admission must be clear, unequivocal, and uniquely within the admitting party's personal knowledge..." Armstead v. National Freight, Inc., IL. App (3d) 170777.

---

18
"FedEx did not deliver the Avenatti letter. See id. 143, 145." Memorandum In Support of Motion to Dismiss Plaintiffs' First Amended Complaint, paragraph 1, section FACTUAL ALLEGATIONS, pg. 2.

---

225.  Principal defendant, Subramanian and agent non-defendant, INDIVIDUAL 22, John Doe, manager St. Louis FedEx facility allowed principal defendant, United States to electronically seize plaintiffs [3rd-Party's] work product copied at its facility in the City of St. Louis, 3112 S. Grand Blvd., 63118.

226.  Defendant, FedEx by and through attorney defendant, McGowan failed "to plead or otherwise defend" by not "specifically denying" the allegations in the complaint. Defendant, FedEx's agent [employee] allowed defendant, United States' employee [FBI director Wray] or the director's agent [FBI employee(s)] too "seize" plaintiffs' property "Avenatti Letter" mailed in the State of Missouri and "seized" upon its arrival in the State of California **admitted** rule 8(c). Defendants, FedEx and DOJ [FBI] obstructing interstate commerce RICO. Congress amending S 1343 to include commercial carries FedEx and UPS.

SUBSECTION A:   FedEx Printed Receipt Acknowledges Owner of Property & Loss [Actual Robbery] Hobbs' Act

*Proof of "racketeering" as an element of Hobbs Act offenses is not required." United States v. Culbert, 435 U.S. 371 98 S. Ct. 1112 (1978). However, a violation of the Hobbs Act may be part of a "pattern of racketeering activity" for purposes of prosecution under...RICO statute (18 U.S.C. S 1961 et seq.).

227.  October 14, 2019, Defendant, FedEx in its motion acknowledge having receipt of plaintiffs' property "Avenatti Letter." Defendant, FedEx failed to dispute defendant, United States exercised influence [intimidation] to "seize" plaintiffs' property robbery committed against the plaintiff owner of the property; and-

(a).  18 U.S.C. S 1951(a)-"Whoever in any way or degree obstructs, or affect commerce or movement of any article [Avenatti Letter]...in commerce...or attempts or conspires so to do; (b)(1)-The term "robbery" means the unlawful taking or obtaining property from the person..."

228.  Defendant, FedEx has engaged in a "pattern of racketeering activity". First, allowing electronic interception "seizure" of plaintiffs' work product produced by wire [copier] at its facility in the City of St. Louis.[19] FedEx its attorney defendant, McGowan out-of-state-attorney engaging in "wire fraud" in the use of emails to communicate ex parte with district court and Clerk of Court during pending proceeding 18 U.S.C. S 1343. Second, FedEx commercial carrier of mail allowing the "seizure" of plaintiffs' property in transits from the City of St. Louis to the State of California conspiring with another affecting interstate commerce RICO. FedEx's attorney defendant, McGowan did not "specifically deny" the allegation in the complaint of electronic seizures at its facility in the City of St. Louis, and

---

19

"Electronic communications" means any transfer of signs, signals, writings, images, sound, data; see, e.g. 18 U.S.C.A. 2510 / Electronic Communications Privacy Act of 1986 (ECPA) Pub. L. 99-508 100 Stat. 1848.

---

57

Interception of plaintiffs' property [Avenatti Letter] in the State of California **admitted** rule 8(c).

XXVI.  NSA's Metadata Collection & FBI's Oral Communications Interception Executive Order 12333 Joining Defendant(s) Licensed Businesses/Corporations

229.  Defendant, National Security Agency principal function EO 12333 under the Title III program collection of metadata incoming and outgoing telephone numbers authorized under any 215 FISA warrant or Fourth Amendment warrant. NSA accessing defendants, AT&T "Baby Bell's," Verizon Communications, Charter Communications or business telephonic communications network(s).

230.  Defendant, Federal Bureau of Investigation principal function EX 12333 under the Title III program securing of 215 FISA or Fourth Amendment warrant for wiretaps on aforementioned defendants' telephone equipment to "seize" the oral communications of parties [plaintiffs, familial / associational] whose telephone numbers were collected under the NSA's metadata collection seizures.

SUBSECTION A:  Title III Accessory-After-The-Fact RSMo, S 541.110 Defendant AT&T / "Baby Bell"

231.  1982-1985, defendant, AT&T its subsidiary Southwestern Bell Telephone Co. had a monopoly over the telephone communications within the State of Missouri, an antitrust suit by the Department of Justice in 1974 United States v. AT&T. Defendant, parent company AT&T entered into a federal consent decree resulting in the break-up of its subsidiary Southwestern Bell Telephone Company.

232.  1988 - 1989, plaintiffs' alleging in the complaint defendant, United States Title III program commencing defendant, AT&T its subsidiary Regional Bell Operating Companies, (RBOC) or "Baby Bell" continued to be the landline telephone Service Provider of the plaintiffs [majority of estate members,[1]].

233.  1988 – present, defendant, AT&T and its agent "Baby Bell" continued to assist principal United States' Title III program electronic interception program "searches" of AT&T telephone, internet and computer services network to "electronically seize" plaintiffs' work product **"writing"**[19], electronic communications produced by computer or by copier, metadata collection and

oral telephonic communications.

234.  September 18, 2018, defendant, AT&T by and through its agent Randall Stephenson, President, plaintiffs executed upon the defendant second service of the complaint and waiver of service of summons. Defendant, Stephenson failed to "specifically deny" the allegations in the complaint within 21-days AT&T its continuing participation in the Title III program **admitted** rule 8(c). Defendant, Stephenson did voluntarily forego the 60-days for failure to issue return service of a signed waiver of service of summons; and-

(a).  Defendant, AT&T's failure to "plead or otherwise defend" on or before October 9, 2019 defendant defaulting rule 55 inculpatory admission of accessory RSMo, S 541.110 fraud involving wire and wireless communications interstate conspiracy RICO.

SUBSECTION B:  Title III Accessory-After-The-Fact RSMo, S 541.110 Defendant Charter Communications, Inc. / Spectrum

235.  Plaintiffs alleging in the complaint defendant, Charter Communications, Inc., via Service Provider [Spectrum] provides cell phone, landline phone and cable services to plaintiff, Jeffrey L.G. Johnson.

236.  August 10, 2018, defendant, Charter Communications, Inc., by and through its agent defendant, Thomas Rutledge, CEO, plaintiff executed service of process of the complaint and waiver of service of summons via certified U.S. Mail with Proof of Service filed with the clerk's office of the district court.

237.  Plaintiff alleging in the complaint defendant, Spectrum by and through defendant, Rutledge allowed defendant, United States access to its telecommunications [cellphone / landline telephone] wire and wireless network systems assisting in principal United States' Title III electronic interception spying program to seize plaintiffs' metadata and oral telephonic communications; and-

(a).  Plaintiff alleging defendant, Spectrum's equipment cable network can transmit **signals** and **images,** and receive **sound** and **data** with the capability to relay "seized" content to the principal defendant, United States without the knowledge of its customers / consumers.

238.  Defendant, Rutledge failed to "plead or otherwise defend" within 21-days not "specifically denying" the allegations in the complaint defendant, Charter Communications, Inc., is continuing to assist the principal's Title III program violating ECPA **admitted** rule 8(c).[19]. Defendant, Rutledge did voluntarily forego the 60-days to plead for failure to issue return service of a signed waiver of service of summons; and-

(a).  Defendant, Charter Communications, Inc., failed to "plead or otherwise defend" on or before September 3, 2019 defendant defaulting rule 55 inculpatory admission of accessory RSMo, S 541.110 involving the seizure of plaintiffs' metadata, wire and wireless oral telephonic communications interstate conspiracy RICO.

SUBSECTION C: Title III Accessory-After-The-Fact RSMo, S 541.110 Defendant Verizon Communications, Inc.

239.  2008 – 2016, plaintiff. Jeffrey L.G. Johnson alleging in the complaint defendant, Verizon Communications, Inc., provided plaintiff U.S. Government assisted cellphone service program, cellphone service provided plaintiff a recipient under Missouri's Medicaid program.[20].

---

20

QLink is the former cellphone Service Provider for plaintiff Joseph Johnson, and current Service Provider for plaintiff Jeffrey L.G. Johnson under U.S. Government sponsored program. Qlink not joined subject to discovery and being adding as defendant if, assisting in principal's Title III program.

---

240.  August 20, 2018, defendant, Verizon Communications, Inc., by and through its agent defendant, Hans Vestbery, CEO, plaintiff executed service of the complaint and waiver of service of summons via certified U.S. Mail with Proof of Service filed with the clerk's office of the district court.

241.  Plaintiffs alleging in the complaint defendant, Verizon by and through defendant, Vestbery allowed defendant, United States access to its vast

telecommunications network [cellphone] wireless systems assisting principal United States' Title III electronic interception spying program electronically seizing plaintiffs' metadata and oral telephonic communications.

242.  Defendant, Verizon Communications, Inc., failed to "plead or otherwise defend" within 21-days not "specifically deny" the allegations in the complaint defendant, Verizon Communications, Inc., acted an accessory-after-the-fact 18 U.S.C. S 3 involving the seizure of plaintiff's metadata, and wireless cellphone oral communications 18 U.S.C. S 1343 interstate conspiracy RICO **admitted** rule 8(c); and-

(a).  Defendant, Vestbery failed to "plead or otherwise defend" on or before September 3, 2018 defaulting rule 55 inculpatory admission of accessory RSMo, S 541.110 and defendant, Verizon Communications, Inc., did voluntarily forego the 60-days to plead for failure to issue return service of a signed waiver of service of summons.

SUBSECTION D:  Title III Accessory-After-The-Fact RSMo, S 541.110 Defendant Angelica Uniform Group or Angelia Corporation

243.  1987 – 1990, plaintiff, Joseph Johnson was an employee working private security for the former defendant, Angelica Uniform Group now, defendant, Angelica Corporation.

244.  August 10, 2018, defendant, Angelica Corporation by and through its agent defendant, Jamie Shaddix, President and CEO, plaintiff issued service of the complaint and waiver of service of summons via certified U.S. Mail with Proof of Service filed with the clerk's office of the district court.

245.  Plaintiff alleging in the complaint while employed by defendant, Angelia Uniform Group [Angelica Corporation] by and through its former Chief Executive, Lawrence J. Young in furtherance of principal United States' Title III spying program. Defendant, Angelica Uniform Group allowed defendant, United States access to its facility to install cameras physically surveilling plaintiff, and granted access to its business telephone network to monitor plaintiffs' private telephone communications at its business formerly located at 700 Rosedale Ave, St. Louis, MO 63112.

246.  Defendant, Shaddix failed to "plead or otherwise defend" within 21-days not "specifically denying" the allegations in the complaint plaintiffs was a former employee of the company [Angelica Uniform Group]. Defendant allowed principal United States access to its local facility in the City of St. Louis, id, the principal conducted physical surveillance [camera, audio or video], allowed the collection of metadata and interception of private oral telephonic communications of its employee not relevant to employer [business necessity] **admitted** rule 8(c); and-

(a).  Defendant, Shaddix failed to "plead or otherwise defend" on or before September 3, 2018 defaulting rule 55 inculpatory admission of accessory RSMo, S 541.110 and defendant, Angelica Corporation did voluntarily forego the 60-days to plead for failure to issue return server of a signed waiver of summons.

XXVII.  Conspiracy to Conceal Murder and Theft of Human Remains by Defendant(s), SSMHealth St. Louis University Hospital & Chief Medical Examiner

247.  March 3, 1988, defendant, SSMHealth St. Louis University Hospital its agent defendant, Dr. Robert M. Donati attending physician intentionally murdered the plaintiff [Vandelia W. Johnson] while as an inpatient.

248.  Defendant, St. Louis University Hospital [medical teaching institution] caused the death of the plaintiff and its employee defendant, Unknown Doe, staff pathologist, physician, or surgeon perform an illegal autopsy in order to secure plaintiff's brain without prior written, or verbal consent of the deceased or relative RSMo, S 194.115.(1-2). With mitigating offense benefiting the employer St. Louis University Hospital theft of human remains for teaching purposes; and-

(a).  RSMo, 565.020 First degree murder-1."A person commits the offense of murder in the first degree if he or she knowingly cause the death of another person after deliberation upon the matter, or RSMo, S 565.024 Involuntary manslaughter-1."A person commits the offense of involuntary manslaughter in the first degree if he or she recklessly causes the death of another".

249.  August 10, 2019, defendant, SSMHealth St. Louis University Hospital by and through its agent defendant, Steven Scott, President, plaintiffs issued service of plaintiffs' complaint and summons [Process Server] alleging defendant's employee murdered plaintiff [Vandelia W. Johnson] with the intent to secure

human remains for the hospital for medical student teaching purposes.

250.  Defendant, SSMHealth St. Louis University Hospital upon plaintiff's death failed to "immediately notify" the Office of the Medical Examiner of the suspicious death occurring at its hospital RSMo, S 58.720.

251.  June of 1988, non-defendant, Lois K. Hess, SSMHealth St. Louis University Hospital, Medical Records Dep't pursuant to RSMo, S 194.115.7 regarding autopsy reports. Non-defendant, Hess upon request provided plaintiffs [Jeffrey and Joseph Johnson] 2-Autopsy Reports dated May 27, 1988. Autopsy Report No. 1 [original] stating the cause of death [Unknown], and that no photographs were taken, and a Autopsy Report No. 2 [Addendum] with the Addendum stating the hospital had retained plaintiff's brain exculpatory guilt criminal admission; and-

(a).  Failure to take and retain photographs during the illegal autopsy performed defendant failed to maintain records for purposes of Medical Examiner's investigation 58.720; see, e.g. section 4 penalty.

252.  Inculpatory guilt admission by defendant, SSMHealth St. Louis University Hospital by and through defendant, Scott's failure to "plead or otherwise defend" within 21-days rule 12 **admitted** rule 8(c). Defendant, St. Louis University Hospital not "specifically denying" the allegations in the complaint murder, desecration of a corpus, and theft of human remains with mitigating offense conspiring to conceal failure to report the death to authorities defendant defaulting Fed. R. Civ. Proc. 55.

SUBSECTION A:  <u>Defendant, SSMHealth St. Louis University Hospital Failure to Report, Defendant, City of St. Louis Office of the Medical Examiner Failure to Investigate Suspicious Death, and Court Administrator Failure to Secure Property</u>

253.  June of 1988, plaintiffs [Jeffrey and Joseph Johnson] in a meeting with defendant, Dr. Michael A. Graham, Chief Medical Examiner at the Medical Examiner's Office. Defendant, Graham had no knowledge of the following facts in June of 1988 supporting defendant, SSMHealth St. Louis University Hospital's agent defendant, Dr. Donati attending physician did not report the suspicious death occurring at the medical facility 3-months earlier on March 3, 1988.[21].

63

254.  Defendant, Graham was informed that defendant, SSMHealth St. Louis University Hospital had performed 2-autopsies the second autopsy occurring after the plaintiff [Vandelia W. Johnson] had been buried, defendant Graham stated: "That's not unusual".  Defendant, Graham was proffered proof that defendant, SSMHealth St. Louis University Hospital employee non-defendant, Hess provided the plaintiff 2-Autopsy Reports the first Autopsy Report listed the cause of death Unknown [suspicious death] occurring within the jurisdiction of the City of St. Louis. The second Autopsy Report proffered [Addendum] listed the defendant had retained the brain of the plaintiff postmortem examination. Defendant, Graham abruptly ended the meeting after, the revelation of the cause of death as Unknown and defendant retaining human remains.

255.  1988 – present, defendant, Graham as the Chief Medical Examiner had knowledge of the suspicious death, and theft of human remains by defendant, St. Louis University since June of 1988. Defendant, Graham knew any suspicious death occurring at any medical facility within the jurisdiction of the City of St. Louis. The City Medical Examiner's Office had jurisdiction to investigate the suspicious death and in an Autopsy Report determine the cause of death.[22].

---

21
RSMo, S 58.451 Death to be Reported and Investigated by Coroner. 1.-"When any person, in any county in which a coroner is requited S 58.010, dies and there is reasonable ground to believe that such person died as a result of, sec. 4-"In any unusual or suspicious manner." Sec. 5(1)-"…any person having knowledge of such death shall **immediately** notify the coroner of the known facts concerning the time, place, manner and circumstances of the death. **Immediately** upon receipt of notification, the coroner…shall take charge of the body and fully investigate the essential fact concerning the medical cause of death…"
22
RSMo, S 58.451, sec. 5(4)-"In any case of sudden…or suspicious death after which the body was buried without any investigation or autopsy, the coroner, upon being advised of such fact, may at coroner's own discretion request that the prosecuting attorney apply for a court order requiring the body to be exhumed."

256.  Defendant, Graham knew the unlawful theft of human remains by defendant, St. Louis University Hospital constituted a Class C felony 570.083(1)(3). Defendant, Graham intentionally did not exercise the discretion of his office, defendant withheld notification from the prosecuting attorney of the death, and did not seek to exhume the body to "fully investigate" the suspicious death within the jurisdiction of the City of St. Louis sec. 5(1) n20.

257.  Defendant, Graham contravening state law sought to hinder the prosecution of any employee of defendant, SSM Health St. Louis University Hospital by withholding notification of the death from the prosecuting attorney; and-

(a).  RSMo, S 575.030. 1-"A person commits the crime of hindering prosecution if for the purpose of preventing...prosecution...or punishment of another for conduct constituting a crime he: sec. (1) "...conceal such person" from law-enforcement charged with the prosecution of the criminal offense; and-

(b).  Defendant, Graham, Chief Medical Examiner, acting under the State's "police powers" allowed property [human remains] of another to be "taken" for private use by a corporation, defendant, SSMHealth St. Louis University Hospital licensed by the State of Missouri to conduct business within the jurisdiction of the state and City of St. Louis.

XXVIII.  Permissive Joinder Mo. R. Civ. P. 52.05(a) Estate Member,[1]

258.  December 30, 2019, plaintiff, estate member Jerry A. Johnson [prisoner No. 081261-8] currently under conditional release program of defendant, State of Missouri, defendant, City of St. Louis, circuit clerk filed plaintiff's writ of habeas corpus and motion for appointment of counsel cause No. 1922-cc12348. Plaintiff contested the state's ordered commitment and indefinite detention custody of the Missouri Department of Mental Health since September 19, 1977.

259.  December 30, 2019, circuit court granted plaintiff, Jerry A. Johnson leave to proceeding in forma pauperis and request for summons filed. Cause No. 1922-cc-12348 assigned, defendant Circuit Judge Christopher McGraugh, Division 19. Defendant, Circuit Clerk Thomas Kloeppinger noted on the docket entry the

following: "The Summons were not issued due to the nature of action." Rule 54.01(a)-"Upon the filing of a pleading requiring service of process, the clerk shall **forthwith** issue the required summons or other process." Service of process of summons and other paper Writ of habeas corpus rule 43.01(c)(2)(C) electronic mail by Circuit Clerk's Office

260.  December 30, 2019, plaintiff's request for summons and service of writ upon defendant(s), Kimberly M. Gardner, Office of the Circuit Attorney, City of St. Louis and Mary Fox, District Public Defender, Office of the Public Defender, City of St. Louis. Defendant(s), Gardner, Circuit Attorney and Fox, Public Defender absent service of process failed to "plead or otherwise defend" within 30-days in a responsive pleading on or before January 31, 2020.

261.  Defendants, Judge McGraugh and Circuit Clerk Kloeppinger intentionally denying service of summons in a capital case denied plaintiff's right to due process Mo.Const., Article I, sec. 10 and United States Constitution Fourteenth Amendment. Defendants, McGraugh and Kloeppinger denied plaintiff's right to petition Writ of habeas corpus for state's restraint of plaintiff's liberty indefinite detention cruel and unusual punished Eighth Amendment.

 SUBSECTION A:  Information and Records Produced by Whom Missouri Crime Victim's Statute or Discovery Rule 56

262.  Defendants, Judge McGraugh and Clerk Kloeppinger intentionally denied service upon the Office of the Circuit Attorney, because the conduct of defendants, Circuit Judge Charles D. Kitchin, former Asst. Circuit Attorney Sam C. Bertolet, and Public Defender Frank Fabbri, III, on the 19th day of September 1977 was a criminal act.

263.  November of 1976, plaintiff, Jerry A. Johnson arrested within the jurisdiction of the City of St. Louis. November of 1976 – September 19, 2019 defendant, State of Missouri did not arraign the plaintiff within 36-hours of plaintiff's arrest RSMo, S 545.030.

264.  September 19, 1977, Defendant, Judge Kitchin after 36-hours for arraignment had run. Defendant, Kitchin arraigned the plaintiff and ordered plaintiff committed into the custody of the Missouri Dep't of Mental Health.

265.  According to defendant, Kitchin's order and judgment defendants, Asst. Circuit Attorney Bertolet and Public defender Fabbri attended the in camera hearing in Division 20 in re State of Missouri v. Jerry A. Johnson No. 76-287-A.

266.  Defendants, Judge McGraugh and Clerk Kloeppinger knew under the Missouri Crime Victim's Statute RSMo, 595.209 or discovery rule 56 defendant(s), Gardner, Circuit Attorney and Fox, Public Defender would have to provide the plaintiff documentation on the arrest and prosecution by the Office of the Circuit Attorney and assigning of an attorney occurring in 1976 - 1977.

267.  Defendant, Judge McGraugh delayed adjudication of plaintiff's Writ of habeas corpus "suspending" that which could not be suspended writ of habeas corpus Article 1, sec. 9 United States Constitution.; and-

(a).  Article 1, sec. 9 designated Writ of habeas corpus petition a **"privilege"** guaranteed under "supreme law" U.S. Constitution. Defendants, Judge McGraugh and Clerk Kloeppinger "suspending" plaintiff's writ, defendants' conduct was colorable whoever within any State or Territory denies any person **privileges** and **immunities** is civilly liable under Section 1983.

SUBSECTION B:  Concealment and Cover-Up by Officers of the Court

268.  Defendant(s), judge McGraugh and clerk Kloeppinger withholding service of process in a non-capital case prisoner's writ of habeas corpus constituted a criminal tort concealment when, "cause of confinement was challenged" Wilwording v. Swenson, 439 F.2d 1331 (8th Cir.). Prisoner...theoretically could gain relief at the state level through injunction, writ of prohibition...or state administrative procedures act [439 F.2d 1331]; and-

(a).  December 30, 2019, plaintiff's writ was filed by circuit court, after petition by the inmate the writ must be granted or denied by the court "without delay." S 532.060, RSMo, 1969.  Defendant, Gardner by and through Circuit Attorney Office [receptionist] was hand-delivered a copy of the writ and was served with plaintiff's motion Joinder of party needed for just adjudication. Defendant, Gardner's fiduciary duty to join RSMo, S 56.450-"The circuit attorney of the city of St. Louis **shall** manage and conduct **all** criminal cases...and proceedings of which the circuit court of the city of St. Louis shall have jurisdiction.

67

XXIX.   <u>Defendant, Attorney Andrew S. Berg Default and False Affidavit and Filing by Defendant, Berg and Law Firm Brinker & Doyen Rule 11 Sanctions</u>

Defendant, attorney Berg: "I am an attorney and counselor at law and duly licenses in the State of Missouri." Affidavit, Exhibit A, pg. 1, line 3.

269.   August 20, 2019, defendant, Berg by and through his agent Melanie refused service of plaintiffs' complaint and waiver of service of summons via Certified Mail Receipt 7018 0680 0001 5127 4815 c/o Berg, Borgmann, Wilson, Reynolds & Wolk, LLC.

270.   October 3, 2019, defendant, Andrew S. Berg by the clerk's office issued electronic service of the complaint and alias summons in lieu of agent Melanie [DOC 9]. Defendant, Berg "failed to plead or otherwise defend" against the allegations in the complaint within 21-days on or before October 24, 2019.

271.   December 13, 2019, defendant, attorney Smith filing notice Entry of Appearance [Doc 47] and filed defendant, Berg's motion to dismiss, memorandum in support of its motion to dismiss and defendant, Berg's affidavit filed with the district court were "time barred" rule 12. Defendant, Berg in his Affidavit alleged the following: "I never have been served a copy of the summons and of the complaint from the Lawsuit as required by Federal Rule of Civil Procedure 4." Affidavit, pg. 2, line 7, Sec. 506.150 R.S.Mo. (2016) and Missouri Rule of Civil Procedure 54.13." Affidavit, pg. 2, line 13; defendant, attorney Smith in the motion and memorandum re-alleged defendant, Berg did not receive electronic service of process by clerk's office indicated on DOC 9; and-

(a).   Defendant(s), Affidavit and motions materially false statements 18 S 1001, sec. (a)(2)-"Makes any materially false...or fraudulent statement or representation"; or sec. (3)-"makes or uses any false writing or document knowing the same to contain any materially false...or fraudulent statement or entry." Fed. R. Civ. P. rule 11 sanctions against client and attorney false representations to court rule 11 required a "reasonable inquiry" determination the client had not received service [DOC 9], or the motion to dismiss lacked "good grounds" and defendant's motion(s) were time barred rule 12; Golden Eagle Distribution Corp. v. Burroughs Corp., 801 F.2d at 1531, 1536 (9th Cir. 1986).

68

272.  Defendant, attorney Smith in defendant's motion(s) inferring neither he, meaning attorney Smith nor his client defendant, Berg had a copy of the complaint, prior too, attorney Smith filing defendant, Berg's motion(s) and sworn Affidavit [written documents] submitted in proceeding defendant and attorney knew were pending; false statements 18 U.S.C. S 1001(a)(2)(3).  Defendant, Berg in the sworn Affidavit and attorney Smith's motion(s) affirmed the false statements by client and attorney: "I have reviewed a document entitled "Plaintiffs" Motion for Default Judgment and (Proposed) Order Granting Default Judgment." Affidavit, pg. 1, line 4; and--

(a).  Defendant, attorney Smith in defendant's memorandum acknowledge having the complaint stating the following: "On August 12, 2019, Plaintiffs subsequently filed an amended complaint which seemed to incorporate by reference all allegations from the original complaint. (See, Amended Complaint, Doc. 4)." Defendant, attorney Smith stating in defendant, Berg's filing: "The eighty-four (84) page complaint...naming approximately one hundred thirty-seven (137) federal defendants as well as sixty-three (63) other defendants...One of the defendants listed is Andrew S. Berg ("Defendant") (See Complaint, Doc 1, p. 10.

273.  One. Attorney Smith knew the number of defendants listed in the complaint [Lawsuit]. Two. Attorney Smith knew the complaint listed his client as defendant. Three. Attorney Smith knew the name of the party Johnson having filed the Lawsuit for purposes of filing defendant's motions. Four. Attorney Smith knew the case number and captioned defendant's motion(s) according to the Lawsuit. Material facts supporting the Court's personal jurisdiction over the defendant attorney and client "service of summons satisfied." Omni Capital Int'l., Ltd., vs. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 104, 108 S.Ct. 404, 409, 98 L.Ed.2d 415 (1987); and "venue and jurisdiction over the subject matter of the suit asserts jurisdiction over the person of the party served."

SUBSECTION A: Code of Professional Conduct Violation by Attorney and Law Firm

274.  Defendant, Berg knew his sworn Affidavit under Notary Seal was false or perjury that defendant did not receive serve the complaint and alia summons by clerk's office or defendant did not avoid service of the complaint and waiver of

69

service of summons by plaintiff.

275.  Defendant, Brinker & Doyen by and through defendant attorney Smith knew defendant, Berg's Affidavit was false made under Notary Seal [perjury], prior too, attorney Smith re-alleging in the motion to dismiss and memorandum the false statement made in the defendant's Affidavit. See, e.g. rule 4-3.3(a)-"A lawyer shall not knowingly sec. (1)-"...fail to correct a false statement of material fact or law previously made to a tribunal by the lawyer; sec. (3) offer evidence that the lawyer knowns to be false; and sec. (b)-"A lawyer who represents a client in an adjudicative proceeding and who knows that a person intends, to engage...in...fraudulent conduct related to the proceedings shall take reasonable remedial measures...disclosure to the tribunal."

SUBSECTION B:   Defendant, Berg's Breach of Contract & Frivolous Suit Admissions Rule 8(c) Motion to Dismiss "Time Barred"

276.  2019, defendant, Andrew S. Berg's "failure to plead or otherwise defend" not "specifically denying" the allegations in the complaint allegations not denied are **admitted** rule 8(c). Defendant, Berg [Julius H. Berg & Assoc., PC] in 1987 entered into a contract with Vandelia W. Johnson in re Estate of P.D. Johnson No. 3-87-0974-PD Probate Division, City of St. Louis **admitted**. Defendant, Berg while the contract was in force sought to withdraw under rule 51.05 after the death of his client occurred on March 3, 1988 **admitted**. Defendant, Berg motion to withdraw rule 51.05 contravened the "no commencement provision," and withdrawal motion was after (2) judges were assigned the probate proceeding **admitted**. Defendant, Berg knew or should have known the doctrine of "privity of contract" only the parties to the contract can sue, or be sued **admitted**. Defendant, Berg knew or should have known withdrawal prior too, settlement of estate breached the contract "joint and several" terms payment of fees upon settlement of estate **admitted**. Defendant, Berg in State circuit court proceeding transfer from probate division "sued" non-contractual Third Party [Rita J. Johnson] under Notice of Hearing a frivolous suit RSMo, S 514.205.1 **admitted**.

277.  1987-1988, Non-defendant, attorney Dennis A. Buchheit formerly of Julius H. Berg & Associates served as assistant attorney to defendant, Andrew S. Berg in estate probate proceeding No. 3-87-0974-PD.

70

XXX. <u>Non-Defendants, Non-Defendants Individually Numbered, Dropped Parties Having Knowledge Joinder in State Circuit Court Proceeding</u>

278.  Allegations alleged in Federal district court proceedings re-alleged in State circuit court proceeding concurrent jurisdiction to hear plaintiffs' Section 1983, RICO and default claims. Defendants and non-defendants served complaint and summons, complaint and waiver of service of summons, or complaint and alias summons. Public office of succession having knowledge of the Title III program and conspiracy to deprive persons of rights and privileges 42 U.S.C. S 1985, or neglect fail to act to prevent the further deprivation S 1986 can be amended to defendant; and-

(a).  Parties non-defendants and non-defendants, Individually Numbered, and dropped parties under joinder subject to subpoena in circuit court for testimony Rule 52.04(a)-"A person shall be joined in the action if: (1) in the person's absence complete relief cannot be accorded among those already parties" [plaintiffs, defendants, John Does or Unknown Does].

XXXI. <u>Defaulting Parties Defendants' Defaults are Re-Alleged in State Circuit Court Concurrent Jurisdiction</u>

279.  2019, defendant, district judge Clark's arbitrary decision to enter an order dismissing plaintiffs' Section 1983 claim against defaulting defendants, St. Louis County, State of Missouri, AT&T, Angelica Corporation, SSMHealth St. Louis University Hospital, Verizon Communications and Charter Communications. Constituted a "unilateral act" with the intent to produce legal effects, too, absolve defendants' civil liability default admission [73 F.2d 795].

280.  Rule 55 Fed. R. Civ. P. default judgments not entered by district court against defaulting parties in plaintiffs' Section 1983 claim, those defaults occurring within the jurisdiction of the State of Missouri are colorable default claims under State circuit court's concurrent jurisdiction addressing plaintiffs' Section 1983 civil claims; and-

(a).  United States Constitution contains a default provision Judiciary Act of 1789, sec. 15-"That all the said courts of the United States, shall have power in the trial of actions at law...to give judgment against him or her by default." In

addition, "it is held a judgment in default means just that-it is default obtained due to default." Masters v. Leaver, [1999] EWCA Civ. 2016.

XXXII.   Title III Investigation(s) by Circuit Attorney and Prosecuting Attorney Documents Discoverable Not Afforded Investigative Secret Privilege by Prosecutor of Law Enforcement

281.  Non-defendants, circuit attorney Gardner and county prosecutor Bell having knowledge of the Title III surveillance and interception program within their respective jurisdictions. Documents relevant to any investigation are not protected privilege in pending State circuit court proceedings under Missouri Crime Victim's Statute RSMo, S 595.209; and-

(a).  S 595.209 sec. 17(5)-"...no privilege of confidentiality shall exist...rights of victims...are absolute and the policy of this state..."; and-

(b).  S 595.209 sec. (11) "...victims, to be informed by the prosecuting attorney of the right to restitution..."; sections 17(5), sec. (2) and subdivision (5) and sec. 11 are constitutional guaranteed rights.[23].

(c).   Discovery request to produce documents subpoena duces tecum from agency [Circuit Attorney's Office and Office of the Public Defender] rule 56; see, e.g. S 595.209 sec. (2) "...and upon request of the victim the right to information about the crime, as provided for in subdivision (5) the right to be informed by local law enforcement."[24].

---

23

Missouri Constitution, Article I, sec. 32-"The right to restitution, which shall be enforced in the same manner as any other civil cause of action, or as otherwise provided by law; sec. (8) "...and upon request of the victim the right to information about the crime..."

24.

Non-defendant(s), Col. John W. Hayden, Jr., Chief of Police, City of St. Louis and Col. Jon Belmar, Chief of Police, St. Louis County, or successor(s).

---

XXXIII.  Pending District Court Proceeding Obstructing, or Impeding Delivery of
U.S. Mail by Postal Employees Obstructing Interstate Commerce

   *United States Postal Service slogan: "Neither rain, nor snow, nor sleet, nor
hail only a conspiracy can prevent the delivery of the mail."

   282.  February 1, 2015, defendant Megan Brennan sworn into office becoming
Postmaster General. Defendant, Brennan by and through defendant(s), John or
Unknown Doe United States postal employees obstructed or impeded the
delivery of plaintiffs' "time sensitive" mail [complaint and waiver of service of
summons] under contract Certified Mail.

   283.  Defendant, Brennan in two know KNOW instances failed to deliver plaintiffs'
Certified Mail. First instance, Defendant, Berg in his sworn Affidavit [dated
December 13, 2019] stated defendant did not receive service of the complaint
and waiver of service of summons Certified Mail 7018 0680 0001 5127 4808
mailed August 20, 2019 marked Return to Sender by postal service; and-

   (a).  Defendant, Berg at the address 12813 Flushing Meadows Dr., Ste. 150, St.
Louis, MO 63131 on plaintiffs' Certified Mail marked "return to sender Unable to
Forward" defendant, Berg acknowledged receipt of service at the aforementioned
address a second document entitled "Plaintiffs' Motion for Default and Default
Judgment and (Proposed) Order Granting Default Judgment."

   284.  Second instance, Certified Mail 7019 0140 0000 8500 8254 addressed to
The Office of the Circuit Attorney, c/o Circuit Attorney Kimberly M. Gardner 1114
Market St. #401, St. Louis, MO 63101 was marked "Return to Sender" wrong
address US Attorney's Office unable to forward. Postal employee defendant, John
or Unknown Doe knew the document address sought delivery to the circuit
attorney and not the US Attorney's Office located at 111 S. 10th Street, St. Louis,
MO 63102.

   285.  Defendant, Brennan based upon defendant, United States' Title III
electronic surveillance and interception program. Defendant, Brennan and postal
employees under her supervision acting in concert with other agencies of
Government, sought to prevent the delivery of the mail, too, more-likely-than-not
an additional 5-defendants under Certified Mail, whose mail was "seized" causing

defendants to default who failed to plead or otherwise defend against the allegation in the complaint.

286.  Defendants, Brennan or postal employee John or Unknown Doe(s), obstructed the delivery of "time sensitive" mail 18 U.S.C. S 1701, or obstructing correspondence in a pending legal proceeding 18 U.S.C. S 1702.

SUBSECTION A:  State Circuit Court Proceeding Service Acknowledged When

*Rule 43.01(d)-"…Service by mail is complete upon mailing…" and Proof of Service [Certificate of Service] via Sheriff or party not part of the litigation over the age of 18-years serving as Process Server.

SUMMARY

FIRST PARTY IN LITIGATION UNDER LETTERS of ADMINISTRATION:

Estate's Court Appointed Administrator Failure to Collect Property

"Equal treatment before the law is a pillar of democratic societies. When courts are corrupted by greed or political expediency, the scales of justice are tipped, and ordinary people suffer," said Huguette Labelle, Chair of Transparency International. "'Judicial corruption means the voice of the innocent goes unheard, while the guilty act with impunity." Global Corruption Report 2007: Corruption in Judicial Systems.

February 26, 1987, decedent plaintiff, P.D. Johnson dies while residing in the State of Missouri, City of St. Louis. January 28, 1988 defendant, State of Missouri, probate division granted decedent's right to an estate in re Estate No. 3-87-0974-PD. First publication of estate No. 3-87-0974-PD June 25, 1987. Surviving spouse Vandelia W. Johnson granted Letters on June 23, 1987.

March 3, 1988, plaintiff, Vandelia W. Johnson wife of the decedent who served as decedent's estate administrator, prior too, settlement of the estate dies while residing in the State of Missouri, City of St. Louis. Upon the death of the wife on March 3, 1988, prior too, settlement of the decedent's the estate deceased administrator [spouse] under the Probate Code in 1988 retained "absolute" "due process property interest" Fourteenth Amendment.[25].

74

---

25

1866 Civil Right Act 14 stat. 27-30, Section 1-"That all persons born in the United States...are hereby declared to be citizens of the United States; and such citizens, of every race and color...shall have the same right, in every State...in the United States...to inherit...and convey real and personal property, and to the full and equal benefit of all laws and proceedings for the security of person and property..."

---

Plaintiff, Vandelia W. Johnson a woman unlike her husband she was denied an estate right to solely "inherit property absolutely" in her name by defendant, State of Missouri under color of state law [Revised Missouri Probate Code]. Plaintiff, a woman and member of a suspect class [African American] denied privileges and immunities guaranteed under preempting federal law 1964 Civil Rights Act prohibiting discrimination based upon gender, and the 1866 Civil Rights Act guaranteeing "equal rights for all persons" in federal, state and local court proceedings.

SUBSECTION A:  Defendant, Missouri General Assembly Revises Probate Code "Absolute Property Right" To Support State Agency's Fraudulent Tax Lien

*"That no ex post facto law...can be enacted." Missouri Constitution, Bill of Rights, Article I, sec. 13. See, e.g. prohibition against enacting ex post facto law citing Doe v. Roman Catholic Diocese, 867 S.W.2d 338 (Mo. en banc), also Art. I, sec. 13, of the Missouri Constitution, Bill of Rights. Id.

287.  January 6, 1988, defendant, State of Missouri by and through its agency [Missouri Dep't of Social Services] filed a 'lien' $19,580.00 against the decedent's estate 3-87-0974-PD a "lien" revised to $60,839.61. Missouri Dep't of Social Services citing grounds for its 'lien' not filed within 6-months of first publication, state's taxing authority exemption RSMo, S 473.360; and-

(a).  Joinder rule 52.04(a)(1) defendant, Dep't of Social Services' agent via succession non-defendant, Steve Corsi, Director, for predecessor director in 1988 to address state's taxing authority exemption scheme RSMo, S 473.360.

288.  Any, state assistance welfare payments or Medicaid,[26] under purported state's taxing authority exemption RSMo, S 473.360. Benefits provided the decedent, prior too, his death are not a form of tax-delinquency subject to collection in probate proceeding. State of Missouri, City of St. Louis and United States would be those "taxing authorities" for purposes of S 473.360. RSMo, S 105.262 Director of the Missouri Dep't of Revenue is the appropriate State agency for tax collection "liens" in suit filed in circuit court proceedings.

---

26

Welfare benefits are in the nature of private property rights and are rights within the meaning of Art. V, S 22 Mo.Const.; Hill, 503 S.W.2d 6, 10-11. Medicaid medical assistance established by S 208.051(4) RSMo, S 1969 (repealed Mo. 1973, p. 358 Jan 1, 1974) retained eligibility S 208.151.1(12), RSMo, 1986) provisions do not reference welfare assistance and Medicaid as taxable 'liens' against an estate.

---

289.  Persons having received state benefits [welfare or Medicaid] assistance dying without an estate for purposes of probate proceedings defendant, Missouri Dep't of Social Services argument as "taxing authority" S 473.360 is legally void uncollectible purported tax Lien. Defendant, Missouri Dep't of Social Services' "lien" for state assistance against plaintiff, P.D. Johnson constituted fraud and state sanction stealing from deceased persons under color of state law Probate Code.

290.  1988, non-defendant, Circuit Judge Nichols, deceased [first name unknown] by and through his successor, non-defendant Circuit Judge Thomas O'Shea divided the estate's assets $17,990.28 allowing a Family Allowance $7,500.00.

291.  Missouri requires that an estate over $40,000.00 in order to go through a standard probate proceeding, but an estate under $40,000.00 first published in 1987 was finalized in 1996 the delay was based upon the anticipated revision of the Probate Code by the defendant, Missouri General Assembly in order to collect on a fraudulent "tax lien" S 473.360; and-

(a).  Joinder rule 52.04(a)(1) defendant, Missouri General Assembly' agents via succession non-defendant(s), Elijah Haahr, Speaker and Dave Schatz, President pro tempore for predecessor(s) in 1992 revising Probate Code.

292.  1992, defendant, Missouri General Assembly revised the provision in the Probate Code that upon the death of the spouse who served the estate as administrator previously retained "absolute property right." Under the revision of the Probate Code upon the administrator's death, prior too, settlement of the estate prior "absolute property right" of the administrator reverted back to the decedent ex post facto law not controlling in re estate No. 3-87-0974-PD first published in 1987; and-

(a).  The **decision** by the Missouri General Assembly revising the Probate Code "affected the plaintiff's civil rights" to "absolute property right" under the 1866 Civil Rights Act property inheritance succession from decedent, to deceased spouse who served as administrator, to deceased administrator's surviving 8-children. Montell, Id, at 690-91, 98; and-

(b).  Defendant, Missouri General Assembly enacted the revision of the Probate Code, at the time, the estate was pending in Federal district court proceedings commencing in 1989 listing the State of Missouri a defendant.

293.  March 3, 1988, prior too, the spouse administrator's death the wife with surviving children was due the first $20,000.00 of the estate assets, plus 50% of the balance of the estate. Therefore, the surviving spouse [wife] retained "absolute property rights" over the entire estate's $17,990.82 notwithstanding under the Probate Code in 1988 that upon her death plaintiff, Vandelia W. Johnson retained "absolute right" over the estate's assets and Missouri does not have an inheritance tax, that "absolute property right" via succession was transferrable to the surviving children inheritance tax exemption.

294.  September 24, 1993, Defendant, Circuit Judge Mary K. Huff now presiding based upon the revision in the Probate Code entered a Memorandum denying the estate's motion to dismiss Dep't of Social Service's lien against the decedent, P.D. Johnson in re estate No. 3-87-0974-PD $24,996.00 an amount exceeding the estate's assets.

295.  June 28, 1996, defendant, Dep't of Social Services by and through its attorney defendant, Michael S. Kisling before defendant, Huff filed with the probate division it motion Satisfaction of Claim $7,022.39 fraudulent "tax lien" in the name of the decedent P.D. based upon an ex post facto revision of state law [Probate Code].

296.  February 3, 1993, Defendant, State of Missouri under the $7,500.00 Family Allowance set-aside, distribution of estate assets were made via Cashier Checks $937.50 to each of the 7-surviving children Voucher(s) No. 43910. In re 1/8 Share –Family Allowance –Vandelia Johnson 3-93-1257-PD. Plaintiff, Vandelia W. Johnson received an estate in number "only". Defendant, State of Missouri denied her right to inherit the real property of the estate "absolutely" upon her death, and denied the surviving children's entitlement to the entire estate upon the administrator mother's death under color of state law [Revised Probate Code].

297.  Defendant, court appointed administrator Mark Ostenfeld, prior too, the settlement of estate No. 3-87-0974-PD. Defendant, Ostenfeld failed to collect estate property [human remain] from defendant, St. Louis University Hospital RSMo, S 473.761.1-"...public administrator shall to account for and deliver all money, property...belonging to estate."

SUBSECTION B:  Inverse Condemnation "Taking" of Property by State Agency for Public Use

298.  Defendant, Missouri General Assembly's revision of the Probate Code "property" of the lawful owner plaintiff Vandelia W. Johnson, prior too, the revision was unconstitutional "taken" based upon ex post facto law contravening the Missouri Constitution, Article I, sec. 13. The revision authorizing the "taking" for public use by State agency's use [Dep't of Social Service] if it reasonably likely to create some "public advantage" or "public benefit" in the form of family support service [income assistance] welfare payments and [medical expenditures] Medicaid; Dolan, 389 S.W.3d at 476; and-

(a).  June 27, 1996, additional, inverse condemnation under Petition To Escheat Funds by defendant, Mark L. Ostenfeld, Public Administrator, who acknowledge

upon subscribed oath before Alice Delgman, Public Notary, he transferred estate assets $937.50 to the Office of the State Treasurer, as, unclaimed property before 5-years had lapsed without any further contact with the party.

XXXV.   Wire and Mail Fraud by Court and "All Attorneys, Additional Recipients and Terminated Parties" Plaintiffs' Lawsuit Never Disposed of On the Merits

299.  "…private individuals have a constitutional right to access to the Courts." Bounds v. Smith, 430 U.S. 817, 821 (1977), that is, the right to sue and defend in the courts." Chambers v. Baltimore & Ohio R.R., 207 U.S. 142, 148 (1907); and-

(a).  The elements of wire fraud [email wireless communications transmitted by third-party cellphone Service Provider] under Section 1343 directly parallel those of mail fraud statute, but requires the use of an interstate telephone call or electronic communication made in furtherance of the scheme." United States v. Brisco, 65 F.3d 576, 583 (7th Cir. 1995); and-

(b).  2018-2019, defendant(s), Judge(s) E Richard Webber, Audrey G. Fleissig, Ronnie L. White and Stephen R. Clark and "all attorneys" communicating secretly via email in a pending proceeding violated the Public Records Act, Pub. L. 81-754, 754, 64 Stat. 578 aka 64 Stat. 583; "Federal agency…records to be created and maintained by the agency (36 CFR 1220.14).

XXXII.  Un-indictable Aider and Abetter "'Fourth Estate" Conspiracy of Silence "Media Blackout"

300.  Local, international and corporate media for profit platforms participated in the Government's conspiracy to conceal and cover-up the Title III program from going public, a government interest self-imposed media blackout by news outlet owners, programing editors and reporters.

301.  Race based reporting is not new within an industry dominated by Caucasian males who actively supporting the interest of the government against certain classes-of-people. Media silence or censorship is not a crime per-say, but it contributes to the commission, and furtherance of criminal conduct when 'gagging' free speech granted under the First Amendment, too, advise the people concerning the conduct of their government. According to the latest statistic 8

media giants control over 818 broadcast and TV stations, and the monopoly over airwaves content and programing is spirited by governmental interest and concerns directed at boardrooms among the white-male privilege class.

## PRAYER FOR RELIEF

(1).  The Court accept the court's concurrent jurisdiction over the subject matter and personal jurisdiction over the parties Section 1983 of the Civil Rights Act of 1871 (codified 42 S 1983).

(2).  District court defaults in circuit court concurrent jurisdiction proceeding.

(3).  The Court grant plaintiffs' equitable claim relief RSMo, S 516.120(5) and injunction against defendants RSMo, 526.010 joining defendant from the commission of current and future acts restraint against plaintiffs' liberty; and-

(4).  Federal Tort Claims Acts, FTCA, liability against United States "tort claim." See, e.g. redress tort action for damages brought in state court proceeding RSMo, S 537.030 and S 537.010.

(5).  Plaintiffs seek prospective relief, actual damages, compensatory or legal damages punitive damages, and treble damages.

(6).  Missouri Crime Victim's Act RSMo, S 595.209.

(7).  S 5 Fourteenth Amendment abrogated state's sovereign immunity Eleventh Amendment for state's violation of federal protected civil rights.

(8).  City and county governments not "cloaked" in state's immunity for "tortious acts" by its public official acting under the State's "police powers."

(9).  Grant plaintiffs' demand for jury trial preserved inviolate under Mo.Const., Bill of Rights, Article I, sec. 22(a).

(10).  1964 Civil Rights Act, Pub. L. 88-352, 78 Stat. 241 absolute estate property right for plaintiff, Vandelia W. Johnson and absolute succession property right to surviving children.

(11).  1866 Civil Rights Act, 14 Stat. 27-30.

(12).  Writ of habeas corpus joinder of claim Civil No. 1922-cc12348 rule 55.06.

80

(13).  Plaintiffs' relief is germane to due process Fourteenth Amendment by way of the Due Process Clause Fifth Amendment.

ADDITIONAL RELIEF: The Court should enjoin defendants from continuing to engage in the criminal conduct, grant plaintiffs injunctive and prohibition relief, compensatory damages, actual damages, punitive and treble damages, cost, and pro se fee against defendant, United States in the complaint as following,

Against the United States for compensatory or legal damages, punitive damages and treble damages, original treble damages 1-count RICO $60,000,000,000.00 revised $180,000,000,000.00 additional 2-counts RICO.

Against the State of Missouri compensatory or legal damages, and punitive damage and treble damages $42,000,000.00 1-count RICO.

Against the City of St. Louis, State of Missouri, compensatory or legal damages, punitive and treble damages $32,000,000.00 1-count RICO.

Against St. Louis County, State of Missouri, compensatory or legal damages, and punitive damages $12,000,000.00.

Against AT&T Communications compensatory or legal damages breach of contract, punitive and treble damages $30,000,000.00 1-count RICO.

Against Verizon Communications Inc. compensatory or legal damages, punitive and treble damages $30,000,000.00 1-count RICO.

Against Charter Communications Co. compensatory or legal damages, punitive and treble damages $30,000,000.00 1-count RICO.

Against Angelica Corporation compensatory or legal damages, punitive and treble damages $30,000,000.00 1-count RICO.

Against St. Louis University Hospital compensatory or legal damages $700,000,000.00 murder, theft of human remains, desecration of a corpus punitive damages $1,000,000,000.00.

Against Julius H. Berg & Associates or Andrew S. Berg compensatory or legal damages breach of contract and punitive damages frivolous Lawsuit $12,000,000.00.

81

Against FedEx Corporation compensatory or legal damages breach of contract, punitive and treble damages $60,000,000.00 1-count RICO.

Pro se fee, against United States, in the amount of $144,000,000.00 payable to plaintiff Joseph Johnson.[27].

---

27

See, e.g. Civil Rights Fee Award Act of 1976, 90 Stat. 2641, as amended 42 U.S.C. S 1981.

---

## GOVERNMENT DEPARTMENT SOCIAL SECURITY ADM. (SSA)

Defendant, Social Security Administration, SSA, actual damages $39,400.00 underpayment of Social Security disability benefits, and additional disability benefits seized $1,010.00 per month plus cost of living increase retroactive to February of 2008. Social Security retirement benefits seized $1,010.00 per month plus cost of living increases retroactive to May of 2018. In addition, actual damages $500.00 per month and cost of living increases for seizure of minor child's insurance benefit retroactive to February of 2008 who, had not reached the age of 18-years old, prior too, SSA's seizure of minor child's benefits. Defendant, Dep't of Health and Human Services re-instate of plaintiff [Joseph Johnson's] health insurance Medicare and prescription assistance benefit(s).

There are no kings, princes, or queens. In a constitutional republic the "Presidents are not kings," public servants "…work for the People of the United States and that they take an oath to protect and defend the Constitution of the United States"; (excerpts from the order entered by U.S. District Judge Ketanji B. Jackson).

"Upholding the integrity of the judicial process and law enforcement is of the utmost importance." Wesley Bell, County Prosecutor in re Sgt. Wildhaber v. St. Louis County.

82

## CERTIFICATE OF SERVICE

We, certify that a true and accurate copy of the aforementioned Civil Action/ Petition and summons on or before the ___23rd___ day of March, 2020 via U.S. Certified Mail (postage prepaid) 2-copies Form 4-B with accompanying stamped envelope, or via Private Process Server were mailed or hand-delivered to the following individuals, corporations, or government agency represented by attorneys:

Certified mail Receipt 7019 0140 0000 8501 8666
William Barr, Attorney General for United States/employees
U.S. Dep't of Justice, 950 Pennsylvania Ave. NW, Washington, DC 20530

Process via Sheriff
Eric Schmitt, State Attorney General for State of Missouri/employees
Missouri Supreme Court Bldg., 207 W. High Street, P.O. Box 899,
Jefferson City, MO 65102

Private Process Server
Kimberly M. Gardner, Circuit Attorney
1114 Market Street # 401, St. Louis, MO 63101

Private Process Server
Wesley Bell, County Prosecutor for St. Louis County/employees
100 S. Central Ave., Clayton, MO 63105

Private Process Server
Julian Bond, City Counselor for City of St. Louis/employees
City Hall, 1200 Market Street, St. Louis MO 63103

Private Process Server
Beth Orwick, County Counselor for St. Louis County/employees
41 S. Central Ave., Clayton, MO 63105

Process via Sheriff
Mary Fox, Dist. Public Defender, 1114 Market St. # 602, St. Louis, MO 63101

Private Process Server
Steven Scott, President, SSMHealth St. Louis University Hospital
3635 Vista Ave. at Grand, St. Louis, MO 63131

Certified Mail Receipt 7019 0140 0000 8501 8703
Raj Subramanian, President, CEO FedEx Corporation
942 South Shady Grove Rd., Memphis, TN 38120

Certified Mail Receipt 7019 0140 0000 8501 8697
Randall L. Stephenson, Chairman, AT&T Communications,
175 E. Houston, San Antonio, TX 78205

Certified Mail Receipt 7019 0140 0000 8501 8673
Hans Vestbery, CEO, Verizon Communications
140 W St., Civ. Center, Tribeca, New York, New York 10007

Certified Mail Receipt 7019 0140 8501 8727
Thomas Rutledge, CEO, Charter Communications Co.,
12405 Powercourt Dr., St. Louis, MO 63131

Certified Mail Receipt 7019 0140 0000 8501 8680
Jamie Shaddix, Interim CEO, Angelica Corp. / Angelica Uniform
1105 Lakewood Parkway, Ste. 210, Alpharetta, GA 30009

Certified Mail Receipt 7019 0140 0000 8581
Andrew S. Berg, Attorney
12813 Flushing Meadows Dr., Ste. 150, St. Louis, MO 63131

Certified Mail Receipt 7019 0140 0000 8501 8598
Brinker & Doyen, L.L.P., 34 N. Meramec, 5th Floor, Clayton, MO 63105

Certified Mail Receipt 7019 0140 0000 8501 8574
Sam C. Bertolet, Attorney, 7625 Wydown Blvd., Apt. 1n, Clayton, MO 63105

Joseph Johnson

_Jeffrey L.G. Johnson_ (signature)

Jeffrey L.G. Johnson

1512 S. 13th St.

St. Louis, MO 63104

Tel. (314) 226-9431

_3/2/20_

Date:

_Joseph Johnson_ (signature)

Joseph Johnson

10338 Bon Oak Dr.

St. Louis, MO 63136

Tel. (413) 556-7300

_3/2/20_

Date:

_Jerry A John_ (signature)

Jerry A. Johnson, Prisoner # 081261-8

3836 Cleveland Ave.

St. Louis, MO 63110

Tel. (314) 776-8124

_3/2/20_

Date:

The aforementioned personally appeared before me the Undersigned Notary on the ___2ND___ day of March, 2020.

MY COMMISSION EXSPIRES ___01/26/24___ .

PAUL A. JACKSON
Notary Public - Notary Seal
State of Missouri
Commissioned for St. Louis City
My Commission Expires: January 26, 2024
Commission Number: 12416636

NOTARY